OPINION
Defendant, Derek Bayes, appeals from his conviction for Involuntary Manslaughter, R.C. 2903.04, for which he was sentenced to a nine year term of incarceration. Bayes argues that the trial court erred when it refused to instruct the jury on accident as a defense, and that the jury's rejection of his self-defense claim was against the manifest weight of the evidence.
We conclude that while Bayes was entitled to the instruction he requested because he was charged with Murder, which is a purposeful offense, any error in failing to give the instruction was rendered harmless by his conviction of the lesser-included offense of Involuntary Manslaughter, which is not a purposeful offense as it was charged. We also conclude that the jury could, on the evidence before it, reject Bayes' self-defense claim. Accordingly, Bayes' conviction will be affirmed.
 I.
On October 11, 1999, Defendant Bayes accompanied his girlfriend, Christine White, to the home of her former husband, Dwight Harness, where White intended to retrieve articles of personal property she had left there. Bayes accompanied White for her safety. White had told Bayes that Harness was difficult and had been violent on occasion, and that he kept one or more guns in the home. Bayes was aware that Harness was blind. Bayes told White that he could use a "sleeper hold" on Harness to subdue him should Harness become difficult.
When they arrived at Harness' home, Bayes remained outside when Christine White went in. Harness shortly emerged to learn who might be outside. He discovered Bayes' truck, and began yelling at Bayes and attempted to make physical contact with him. Bayes avoided these efforts and requested neighbors to call the police.
Dwight Harness went back inside, apparently intending to prevent Christine White from accomplishing her purpose. After hearing noises from inside, Defendant Bayes went in and discovered Dwight Harness holding a shotgun that was pointed at Christine White. The three scuffled and the shotgun was taken away from Dwight Harness. Christine White took the shotgun outside and put in on the truck in which she and Bayes had arrived. A neighbor retrieved the shotgun from the truck. White asked the neighbors to call the police for help.
When Christine White went back inside she discovered Defendant Bayes and Dwight Harness on the floor. Bayes had his arm around Harness' neck, applying what Bayes called a "sleeper hold" to render Harness unconscious. Harness was able to regain consciousness, and Bayes reapplied the sleeper hold to cause him to again lose consciousness.
Bayes testified at trial that he had learned the sleeper hold in his younger years when he and his friends employed it on one another without any injury resulting. He used it to control Harness, believing that Harness had other weapons in the house he could use to harm White and Bayes.
When police arrived they found Harness unconscious and yet in the Defendant's grasp. They attempted CPR, without result. Harness was later pronounced dead. His death was attributed to strangulation resulting from a choke hold.
Bayes was originally indicted in Case No. 99-CR-0557 with Involuntary Manslaughter, alleging Felonious Assault as the underlying offense. He was subsequently re-indicted for Murder, R.C. 2903.02, for purposely causing Harness' death.
The charge against Bayes was tried to a jury. Bayes recounted the foregoing events at trial, insisting that he did not intend to harm Harness but only to prevent Harness from attacking him or Christine White until police arrived. The defense requested jury instructions on self-defense and accident. The trial court declined to give an accident instruction but did instruct the jury on self-defense. The court also instructed the jury on several lesser-included offenses, including Involuntary Manslaughter with Felonious Assault as the underlying offense.
The jury returned a verdict finding Bayes guilty of Involuntary Manslaughter. Bayes was convicted and was sentenced pursuant to law. He filed a timely notice of appeal. He presents two assignments of error, which we shall address in reverse order.
 II. SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY NOT PROVIDING THE DEFENSE OF ACCIDENT AS A JURY INSTRUCTION.
 Two findings are required for criminal liability: first, that the accused engaged in conduct which a criminal statute prohibits; second, that he acted with the degree of culpability that the offense prescribes. R.C. 2901.21(A).
Criminal liability may be avoided by proof of an affirmative defense, which is any defensive matter in the nature of a confession of elements of the alleged offense which nevertheless avoids liability because of some excuse or justification that the law recognizes. R.C. 2901.05. The burden to prove an affirmative defense is on the accused. Id.
 An accident is an unusual or unexpected result attending theoperation or performance of a usual or necessary act or event, a resultwhich is outside the range of calculations which the act or eventordinarily involves. As a defensive matter, it disclaims any purpose onthe actor's part to bring that result about. Therefore, a claim ofaccident is not an affirmative defense. State v. Poole (1973),33 Ohio St.2d 18. Rather, it is a factual defense that rebuts anallegation that the accused acted with the degree of culpability that theoffense requires, when that involves purposeful conduct. Jones v. State
(1894), 55 Ohio St. 331.
One who is charged with a purposeful offense and who claims that the result of his conduct was accidental is entitled to an instruction that any evidence of accident weighs against the mens rea element of purpose in the offense alleged. Because accident is not an affirmative defense, the jury may not be instructed that the burden of proving accident is on the defense.
Bayes was charged with Murder, R.C. 2903.02. Bayes requested the instruction set out in Section 411.01 of Ohio Jury Instructions, which would charge the jury that any evidence that Dwight Harness' death was an accident must be weighed against the claim that it was purposeful, a claim to be resolved on the reasonable doubt standard. Because Murder is a purposeful offense, Bayes was entitled to that instruction. The court erred when it refused to give the instruction at Bayes' request. However, the error involved was harmless.
Bayes was convicted of Involuntary Manslaughter, R.C. 2903.04, as a lesser-included offense of Murder. Involuntary Manslaughter is a crime of transferred intent, in which the degree of culpability required for conviction is the culpable mental state of the underlying offense.Stanley v. Turner (C.A. 6, 1993), 6 F.3d 399.
The underlying offense that the court charged the jury it must find in order to convict Bayes of Involuntary Manslaughter was Felonious Assault. As that offense is defined by R.C. 2903.11(A)(1), it is not a purposeful offense. Rather, it requires only conduct which is knowing, that is, conduct wherein the defendant, regardless of his purpose, is aware that his conduct will probably cause a certain result or probably be of a certain nature. R.C. 2901.22(B). Because Bayes' purpose was irrelevant to that finding, he was not prejudiced by the trial court's failure to give an instruction on accident.
The second assignment of error is overruled.
 III. FIRST ASSIGNMENT OF ERROR THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 "Weight" of the evidence refers to the inclination of the greater amount of the credible evidence offered in a trial to prove the issue established by the verdict that was reached. State v. Thompkins (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth and whether those truths preponderate in favor of the verdict according to the applicable burden of proof.
When the claim is made that a verdict is against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror." Id.
Then,
 "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 Id., at p. 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175., Defendant-Appellant Bayes argues that the jury's verdict finding him guilty of an Involuntary Manslaughter offense arising from a Felonious Assault on Dwight Harness was against the manifest weight of the evidence because he proved his affirmative defense of self-defense by a preponderance of the evidence, which is the burden the law imposed on him. R.C. 2901.05.
Self-defense is an affirmative defense that excuses or justifies a use of force which would otherwise result in criminal liability. The basis of self-defense is the perceived necessity of the use of force to protect oneself.
 "To establish self-defense, the following elements must be shown:
 (1) the slayer was not at fault in creating the situation giving rise to the affray;
 (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and
 (3) the slayer must not have violated any duty to retreat or avoid the danger."
 State v. Melchior (1978), 56 Ohio St.2d 15, 20-21 (citations omitted.)
Neither Defendant Bayes nor Christine White initiated the affray between Bayes and Dwight Harness. His violent reaction, especially use of a gun to threaten Christine White, was wholly unjustified. It was not wholly unforseen, however. Defendant Bayes was aware of Harness' violent propensities and that he kept a gun in the house. He was aware that Christine White was fearful of Harness. Yet, he put himself in danger by accompanying her to Harness' home on an errand that he expected could provoke Harness. Bayes' concern for White's safety was commendable, but it could have been better served by seeking police protection on that occasion, protection that is generally available.
The second prong of the Melchior test requires consideration of theforce that was used in relation to the danger the accused believed he wasin. In a simple assault case, an accused is justified in using force"against the imminent use of unlawful force so long as it was not likelyto cause death or great bodily harm." Columbus v. Dawson (1986),33 Ohio App.3d 141, 142. The use of deadly force requires a bona fide belief that the accused is in danger of death or great bodily injury.
 "[I]t is only when one uses a greater degree of force than is necessary under all the circumstances that it is not justifiable on the ground of self-defense . . . The law does not require of the defendant any nice distinction as to the least amount of force necessary, but whether the force used was excessive or not is a question for the trier of facts."
State v. McLeod (1948), 82 Ohio App. 155, 157.
A claim of self-defense requires evidence of an imminent danger which,under the circumstances, the accused reasonably believed required thedegree of force that he employed. That requirement implies a subjectivestandard. State v. Koss (1990), 49 Ohio St.3d 213. Thus, the test iswhether the degree of force was reasonable as to the accused. State v.Reid (1965), 30 Ohio App.2d 215. Nevertheless, whether the circumstances which created that reasonable belief actually existed must be determined objectively.
In State v. Champion (1924), 109 Ohio St. 281, the Supreme Court heldthat the defense of accident is inconsistent with self-defense. TheCourt reasoned: "Self-defense presumes intentional, willful use of forceto repel force or escape force. Accidental force or shooting is exactlythe contrary, wholly unintentional and unwillful." Id., a pp. 286-287. However, the two are not mutually exclusive, and an instruction on both may be appropriate given the circumstances. For example, an accused might claim that his use of force to repel an attack was intentional but that its result was not; that is, that the harm which resulted was accidental. In that event, both instructions should be given.
Two other considerations apply to the self-defense claim Defendant-Appellant Bayes presented. One is that force used to protect another person from harm may be the subject of a self-defense claim.State v. Williford (1990), 49 Ohio St.3d 247. That has specialapplication to acts in defense of members of one's own family. Id.However, the rule applies only if the other person that the accused aidshad the right to use such force. State v. Wenger (1979),58 Ohio St.2d 336.
Another consideration that applies to self-defense claims is the duty to retreat. The duty is set out in State v. Melchior, supra, whichqualifies a self-defense claim with the requirement that "the slayer mustnot have violated any duty to retreat or avoid the danger." Id., at p.21. Thus, in "most circumstances, a person may not kill in self-defenseif he has available a reasonable means of retreat from theconfrontation." Id., at p. 250. That duty requires retreat so long as areasonable means of escape from the danger exists, except when one isattacked in his own home. Id.
 Applying these considerations to the evidence presented, we concludethat the jury's rejection of Defendant-Appellant's self-defense claim isnot against the manifest weight of that evidence, under the tests imposedby Melchior, supra.
Neither Bayes nor Christine White was "at fault" in creating the situation which gave rise to their affray with Dwight Harness. However, as we noted above, Bayes was on notice of Harness' propensity toward violence and he could have sought the help of police to avoid harm at Harness' hands on that occasion.
When Bayes discovered Harness pointing a shotgun at Christine White, he reasonably formed a bona fide belief that she was in imminent danger of death or great bodily harm. That belief permitted him to come to her rescue, an effort which likewise placed him in imminent danger of death or great bodily harm during their struggle with Harness over the shotgun. However, and as to both Bayes and Christine White, the imminence of that particular danger dissipated after they took the shotgun from Harness and White gave it to a neighbor outside. Bayes' concern that Harness might have another weapon he could use against them is not supported by evidence that Harness had one ready at hand, though police did locate a gun in another room. However, the fact that Harness was blind diminishes the prospect that he could have effectively used another weapon against White and Bayes.
Bayes argued that, nevertheless, the force he employed was reasonable because in his experience the "sleeper hold" he used on Harness was non-lethal. That claim relates to the reasonableness of the degree of force that he used, not to the circumstances which justified its use. Having found that those circumstances did not justify Bayes' conduct, the jury was not required to consider whether the result was accidental. The issue of accident is reserved to whether Bayes' conduct was "knowing," not to whether it was justified or excused by necessity, which is the essence of a self-defense claim.
The "sleeper hold" that Bayes used to subdue Harness was not the only means of escape from the danger that Harness presented after the shotgun was taken from him. Bayes and White could have fled the home, avoiding any risk that Harness might harm them. Indeed, they had a duty to retreat in such a fashion if that could avoid whatever danger Harness might present. It was for the jury to determine whether their belief that Harness had other weapons available to use on them as they fled made flight unreasonable under the circumstances. The jury apparently rejected that prospect.
We have carefully considered the evidence presented. It is clear that Defendant-Appellant Bayes acted out of a sincere fear of death or great bodily harm from Harness when he first subdued him. However, a reasonable mind could also conclude that Bayes could have avoided the continued use of force that resulted in Harness' death, notwithstanding the fact that Harness had another gun in the house he might use if released. The option of flight was available to Bayes and, in view of Harness' blindness, flight could have put Bayes and White out of harm's way. Nevertheless, Bayes persisted in use of the "sleeper hold." The jury could find that he violated his duty to retreat, rejecting Bayes' self-defense claim on that basis. We cannot find that, on the record as a whole, the jury clearly lost its way or created a manifest miscarriage of justice in reaching that result.
The first assignment of error is overruled.
 IV. Conclusion
Having overruled the error assigned, we will affirm the judgment from which this appeal was taken.
WOLFF, J. and GLASSER, J., concur
Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
 ____________ GRADY, P.J.