THE STATE OF OHIO, APPELLEE, *v.* MELCHIOR, APPELLANT.

(No. 77-1125—Decided October 4, 1978.)

16

18

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Herbert Creech,* for appellee.

*Messrs. Denny & Henke, Mr. Larry J. Denny* and *Mr. Lawrence W. Henke, III,* for appellant.

## I.

SWEENEY, J. In his first proposition of law, appellant

contends that the trial court committed prejudicial error when it instructed the jury that the appellant must prove the affirmative defense of self-defense by a preponderance of the evidence.

The Court of Appeals, although finding that the trial court had improperly placed upon the defendant a higher degree of proof than necessary to successfully raise the issue of self-defense, held that there was no prejudicial error, since there was insufficient evidence to even raise the defense. We agree.

R. C. 2901.05(A) provides:

"Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused."

In construing the phrase "burden of going forward with the evidence," this court stated in *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, at pages 111-112, that in order for the defendant to successfully raise an affirmative defense, "* * * evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come." Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. See *State* v. *Millett* (Me. 1971), 273 A. 2d 504, 510. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted. See *People* v. *Harris* (1970), 7 Cal. App. 3d 922, 87 Cal. Rptr. 46.

In the instant cause, this court finds that there was insufficient evidence to raise a reasonable doubt concerning the issue of whether the defendant acted justifiably in self-defense.

To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray, *Stewart* v. *State* (1852), 1 Ohio St. 66, 75; *State* v. *Doty* (1916), 94 Ohio St. 258;

*State* v. *Morgan* (1919), 100 Ohio St. 66, 72; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, *Marts* v. *State* (1875), 26 Ohio St. 163, paragraph two of the syllabus; *State* v. *Champion* (1924), 109 Ohio St. 281, paragraph one of the syllabus; *State* v. *Sheets* (1926), 115 Ohio St. 308, 310; and (3) the slayer must not have violated any duty to retreat or avoid the danger, *State* v. *Peacock* (1883), 40 Ohio St. 333, 334; *Graham* v. *State* (1918), 98 Ohio St. 77, 79.

In the instant cause, defendant admitted that it was his intention in accompanying Krista to his apartment to "game" Krista of his money and stereo, and according to defendant's own testimony, Krista did not pull out the knife until after defendant had announced this intention. Defendant was clearly the aggressor. Krista had a right to stand his ground and protect his property. *Erwin* v. *State* (1876), 29 Ohio St. 186. To avoid the conflict, defendant had a duty to retreat.

The court is aware of the well-recognized exception as set forth in 1 Wharton's Criminal Law and Procedure 504-505, Section 232, which provides:

"Even though the accused may in the first instance have intentionally brought on the difficulty and provoked the occasion, yet his right of self-defense will revive and his actions will be held justifiable upon the ground of self-defense in all cases where he has withdrawn from the affray or difficulty in good faith as far as he possibly can, and clearly and fairly announced his desire for peace."

However, nowhere is there evidence in the record indicating an attempt on the part of the defendant to withdraw from the conflict and announce to Krista his intention of abandoning his plan to take Krista's money. On the contrary, the evidence reveals that the defendant mounted a brutal and unrelenting attack.

Contrary to defendant's claim that he merely hit Krista with his fist and that he only grabbed the blade of the

knife, Krista suffered a deep stab wound in the back and a serious cut on the neck. In describing the events immediately preceding Krista's alleged attack, appellant admitted that they were the length of a couch apart at the time, an indication that appellant had the opportunity of retreating from the conflict. Most damaging to defendant's cause is the testimony of the coroner that Krista's death was the result of manual strangulation, and not exsanguination.

Because there was insufficient evidence to warrant submission of the issue regarding self-defense to the jury, the trial court's instruction to the jury that defendant had the burden to prove self-defense by a preponderance of the evidence was harmless error. See *State* v. *Toth* (1977), 52 Ohio St. 2d 206, 212.

Defendant's proposition of law number one is therefore overruled.

## II.

In his second and third propositions of law, appellant contends that the trial court committed prejudicial error in that it placed upon the appellant the burden of proving one of the mitigating factors to R. C. 2929.04(B) by a preponderance of the evidence and refused to admit all evidence relevant to his sentencing.

In his fifth proposition of law, appellant asserts that his death sentence must be reduced to life imprisonment since the Ohio statutory sentencing procedure for capital offenses is unconstitutional as being in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

The recent decisions of the United States Supreme Court in *Lockett* v. *Ohio* (1978),    U. S.    , 57 L. Ed. 2d 937, and *Bell* v. *Ohio* (1978),    U. S.    , 57 L. Ed. 2d 1010, make it unnecessary to discuss the above propositions. Pursuant to the mandates of the United States Supreme Court, this court has already modified the judgment of the Court of Appeals by reducing appellant's sentence of death to life imprisonment.

III.

In his fourth proposition of law, defendant contends that he was denied a fair trial when the trial court admitted into evidence defendant's allegedly involuntary statements.

At the suppression hearing, defendant testified to the following events. Upon his arrest, he was brought into a room for a couple of hours in order to be questioned. Throughout the period he denied involvement in the crime. An officer subsequently came into the room and told defendant that his girlfriend Sheryl Benjamin had made a statement. Defendant accused the officer of lying. The officer then brought Sheryl into the room. She was crying. She told the defendant that she "* * * told 'em what you told me. And that it was self-defense." The interrogator then asked the defendant if he loved the girl, and informed the defendant that the police would have to hold her in custody on conspiracy charges. The defendant told his girlfriend, that because he was an ex-convict, they would "bury" him, to which the interrogator said that " * * * the way they figured it out, what had happened, was almost what my wife had told them. And that it was self-defense." At this point defendant gave a statement, saying that he would do so if they released Sheryl. The detective said they would only take her picture, obtain fingerprints, and return her home.

Keith Thompson, a lieutenant colonel for the Kettering Police Department, participated in the arrest of the defendant and conducted the questioning on the night of January 24, 1976. At the suppression hearing, Thompson stated that the defendant was arrested at 9:15 p. m., at which time Thompson informed the defendant of his *Miranda* rights. Defendant indicated that he understood what was said to him. After arriving at the station and before questioning commenced, Thompson again informed the defendant of his rights, at which time the defendant signed an acknowledgment form. The time was 10:00 p. m.

Thompson interrogated the defendant for approximately one hour, throughout which time the defendant denied

any involvement. Subsequently Detective David W. H. Woolf, who had been questioning the defendant's girl-friend, informed Thompson that the woman had stated that defendant was involved in the homicide. Thompson confronted the defendant with this information, but the defendant still denied any culpability. Thompson respond-ed by saying that he was not lying to him and went out of the room to bring in the girl, who then told the defendant that she had told the police everything and encouraged the defendant to make a statement.

On cross-examination, Thompson testified that through-out the hour of questioning, defendant never said he want-ed to stop answering questions or talk to an attorney. However defendant did indicate a desire to talk to his girlfriend, but was not permitted to do so immediately, since she was also undergoing questioning at that time. Keogh denied that he made any threat to the effect that if the defendant did not cooperate, his girlfriend would be held as an accessory for murder. Thompson noted that the girl was not a suspect in the case.

Detective Woolf, who conducted the first taped inter-view of the defendant, gave the following account at the suppression hearing. Reading from a written copy of the taped interview, Woolf indicated that before taking a statement from the defendant, Woolf advised the defend-ant of his *Miranda* rights, specifically asking the defend-ant whether he had been promised anything up to this point or whether he had been threatened or harmed. The defendant answered these questions in the negative. Woolf's remaining testimony confirmed the testimony provided by Thompson.

With respect to the events surrounding the second statement made by the defendant on February 25, 1976, defendant provided no testimony. However, Dennis R. Keogh, a detective for the Kettering Police Department, did testify. The detective stated that he had been contacted by a deputy from the sheriff's office who informed him that defendant and his girlfriend had attempted a jail break.

Apparently the defendant's girlfriend had been incarcerated by the sheriff's office. Keogh went to the jail to see the defendant. The defendant was interested in making a deal with the detective for the release of his girlfriend. However, aware of the fact that he had no jurisdiction to effect such a release, Keogh contacted representatives from the county prosecutor's office. In the end, a deal was entered into whereby defendant promised to tell all he knew about the attempted jail break, and agreed to answer questions in relation to the Krista case, in exchange for the release of Sheryl Benjamin.

As noted in *Rogers* v. *Richmond* (1961), 365 U. S. 534, 544, the test in determining whether a confession is voluntary is to determine "* * * whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined * * *."

In carefully reviewing the totality of the circumstances in this cause, this court finds that the trial court could properly find that the defendant's statements were voluntarily made based upon a preponderance of the evidence introduced at the suppression hearing (see *Lego* v. *Twomey* [1971], 404 U. S. 477, 489); that is, that the defendant's will to resist was not overborne by threats or improper inducements.

With respect to the circumstances surrounding the defendant's first statement, both officers who questioned the defendant testified that they had made no threats concerning the possible arrest of the defendant's girlfriend. Officer Thompson said that the girl was not even a suspect in the case. The fact that the police officer confronted the defendant with the fact that his girlfriend had made a statement regarding his involvement in the homicide is not in itself an improper practice. *Lisenba* v. *California* (1942), 314 U. S. 219, 240; *Frazier* v. *Cupp* (1969), 394 U. S. 731, 739.

Moreover, the defendant was of majority age, of normal intelligence, and was in command of his faculties at

the time he decided to make the statement. The defendant had prior dealings with the police authorities, indicating that he was not unduly influenced. He was not interrogated for an unreasonable period of time nor had he been subject to physical abuse or harsh conditions. Importantly, the record shows that before each taped period of questioning the defendant was read his *Miranda* rights in response to which defendant has admitted that he was not coerced or induced into making a statement. See *State* v. *Barger* (1978), 53 Ohio St. 2d 135, paragraph two of the syllabus.

Concerning the circumstances surrounding the second statement, there was no evidence introduced on behalf of the defendant at the suppression hearing indicating that the police had threatened the defendant by stating that they would prosecute his girlfriend if she failed to cooperate. Rather, the evidence is uncontroverted that it was the defendant who was attempting to obtain a bargain with the police for release of his girlfriend. Under such circumstances, the statement subsequently made by the defendant to Detective Keogh was clearly voluntary. See *Stein* v. *New York* (1953), 346 U. S. 156, 184-186.

The defendant's fourth proposition of law is overruled.

In conclusion, the judgment of the Court of Appeals with respect to the conviction of the appellant is affirmed. As previously noted, defendant's sentence of death has already been modified by this court to life imprisonment.

*Judgment accordingly.*

HERBERT, CELEBREZZE, W. BROWN, P. BROWN and LOCHER, JJ., concur.

LEACH, C. J., not participating.