OPINION
Appellant, Reuben Bordan, appeals his convictions of felonious assault, with a gun specification and a violence specification, claiming ineffective assistance of counsel. He claims his attorney should have requested Judge Anthony O. Calabrese, Jr. to give a jury instruction on the affirmative justification of self defense. For the following reasons, we disagree and affirm.
On June 23, 1989, Bordan, then twenty-seven years of age, lived with Guadalupe Rodriguez at 3274 West 48th Street. Sometime after ten o'clock p.m., he arrived home and found Michael Phillips, then eighteen years of age and staying with his brother in a home at 3286 West 48th Street, and four other young males partying in front of Rodriguez's residence. Phillips described the group's activity as "hanging out" and drinking beer. Bordan's request of the group to move their party down the street caused Phillips and Bordan to engaged in verbal taunts, which then resulted in a fistfight in the street. When that altercation was over, Bordan retreated and Phillips' brother, Gregory, then twenty-two years of age, arrived. Words were exchanged between Gregory and Bordan, and Bordan was then struck by Gregory and another member of the group. It appears Bordan again retreated, only to return and engage in a fistfight with yet a fourth young male. Eventually, the fight ended and the group, sensing that the police would be arriving, departed, leaving Bordan at his residence.
Bordan was not cooperative with the police when they arrived, and did not want to make a police report. He indicated he would handle the matter himself. The testimony of the witnesses becomes contested after this point.
Phillips and his brother claim that as their group was eastbound on West 50th Street they were confronted by a blue car in which Bordan was a front-seat passenger. Upon seeing the vehicle, Gregory yelled, "He's got a gun," referring to Bordan. Phillips saw Bordan pointing a gun right at him, and then saw Bordan fire two shots, both of which missed him. Phillips turned to run, and while running, was struck in the back by a bullet. He managed to get to a tree which provided him cover, and the car left the scene. Gregory claims he placed his wounded brother in a place of safety and started toward his home on West 48th to get medical help. While on a friend's porch on West 48th Street, he claims to have heard more shooting, and then saw his wounded brother coming through a yard in an easterly direction on West 48th.
Phillips claimed that when the blue car, in which Bordan was a passenger returned, he ran down an alley towards West 48th Street. Again he was confronted by the blue car. Bordan, leaning out of the car window about twenty-five feet away, fired six or seven more shots at him as he attempted to run away. He managed to reach West 48th Street through a back yard where he was met by Gregory. Phillips was then placed in a neighbor's truck and, as the police arrived, he was taken away by an ambulance.
Richard Dennison, then nineteen years of age and living at 3283 West 48th Street, which is across the street from the Rodriguez house, was called by the defense. Dennison stated that at the instant Bordan pulled in the driveway, Phillips and five others charged at Bordan with a tire iron and struck him. A melee ensued wherein everyone was attempting to hold Bordan so that Phillips could beat him. They disappeared behind the back of the home, and then Dennison saw Phillips and his group emerge and walk westbound on West 48th Street. Dennison stated that he then went to the Second District Police Station to make a report of the incident. When he returned, he noticed that police officers were on the Rodriguez property but Bordan was not responding to their questions.
Dennison then stated that sometime later a red van, which was driven by one of Bordan's earlier assailants, stopped in front the Rodriguez house, the passenger door opened, and Bordan began firing his pistol at the van. The van then fled in reverse, as the witness described it in the police report, westerly approximately four houses away. He went on to say that Bordan, along with another male, entered a blue car and drove around the neighborhood passing Dennison's home five times in five minutes. He testified that he then noticed Phillips emerging from the rear of the red van covered with blood.
In November 1989, Bordan was indicted for felonious assault coupled with gun and violence specifications. On. December 28th, at his scheduled arraignment, a capias was issued. Approximately five and one-half years later, in June 1995, Bordan was arrested and arraigned. In July 1995, he posted bail, but because of his non-appearance in August 1995, another capias was issued. In October 1997, Bordan was again apprehended, waived his right to a speedy trial, and on February 2, 1998, a jury trial commenced. On February 4, 1998, the verdict found Bordan guilty of felonious assault with a gun specification and a violence specification.
Prior to sentencing, Bordan's attorney stated:
 Your Honor, I would just like the Court to consider at this time the fact that while the provocation of the victims in this matter did not give rise to the level of self defense, its more than evident by their behavior that there was ample provocation for my client's behavior. That does not justify this behavior. * * *
Bordan received a sentence of three years incarceration for the gun specification and a consecutive three-year term for the felonious assault.
The sole assignment of error states:
 DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THAT COUNSEL FAILED TO REQUEST THAT THE JURY BE GIVEN AN INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF SELF DEFENSE.
Bordan asserts that his appointed counsel's representation at trial was deficient because he failed to raise the affirmative defense of self-defense. As a direct result of this failure, Bordan was found guilty, and sentenced accordingly. The state maintains that Bordan was not entitled to a self-defense instruction, as the defense was controverted in both law and fact.
In State v. Bradley(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus, it was determined that in Ohio an ineffective assistance claim requires proof that "counsel's performance is proved to have fallen below an objective standard of reasonable representation," and, in addition, prejudice arises from counsel's performance. Id. Similarly, the federal test to determine ineffective assistance is whether "counsel's conduct so undermined the proper functioning of the adversarial process" that the defense was prejudiced. Strickland v. Washington(1984),466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692-693. In order to establish such prejudice, an appellant must demonstrate that there is a "reasonable probability that, were it not for counsel's errors, the results of the trial would have been different." Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Furthermore, we operate under the presumption that counsel's assistance was both reasonable and professional. Statev. Thompson(1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407, 416-417. See, also, Strickland, 466 U.S. at 689.
It is also important to note that a reviewing court, when making an evaluation, must be mindful that, "when there is no demonstration that counsel failed to research the facts and law, or that he was ignorant of a crucial defense and counsel makes a tactical choice, the reviewing court defers to counsel's judgment in the matter." State v. Clayton(1980), 62 Ohio St.2d 45, 49,402 N.E.2d 1189. See, also, State v. Roberts(May 9, 1996), Cuyahoga App. No. 69310, unreported.
Self-defense is an affirmative defense and in order to establish it each of the following elements must be cumulatively proven:
 (1) The slayer was not at fault in creating the situation giving rise to the affray * * *; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was the use of such force * * *; and (3) the slayer must not have violated any duty to retreat or avoid the danger, * * *.
State v. Roberts(May 9, 1996), Cuyahoga App. No. 69310, unreported. See, also, State v. Jackson(1986), 22 Ohio St.3d 281,490 N.E.2d 893; State v. Robbins(1979), 58 Ohio St.2d 74,388 N.E.2d 755, quoting State v. Melchior(1978), 56 Ohio St.2d 15,381 N.E.2d 195.
It is clear from the evidence presented that the representation given Bordan was both comprehensive and competent. A choice by trial counsel to provide the avenue of defense he feels is the most credible is a matter of discretion. Bordan fails to point out, to this court, what action by Phillips caused Bordan to believe he was in imminent danger, what prevented him from retreating or why deadly force was his only means of escape. The facts, as presented at trial, clearly show that regardless of whose version the trial court accepted, the Phillips brothers' or Dennison's, Bordan had a viable means of escape and a duty to retreat. As a result, an instruction of self-defense was clearly inappropriate under the circumstances, and Bordan was not prejudiced through his attorney's choice in strategy. Accordingly, counsel's performance is deemed both reasonable and professional.
Bordan's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, P.J., CONCUR;
 JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY.
 ____________________________________ JUDGE, ANNE L. KILBANE