JOURNAL ENTRY AND OPINION
Appellant, Isaac Howard (Howard), appeals his two convictions for the attempted murders of Valerie Merriweather (Merriweather) and Charletta Norton (Norton). In his two assignments of error, Howard claims that the trial court erred in (1) refusing to instruct the jury on Howard's claim of self-defense; and (2) imposing maximum and consecutive sentences. For the reasons that follow, we disagree with each of Howard's claimed errors and affirm his convictions.
In the early evening hours of August 7, 1999, Merriweather, age 27, and Norton, age 26, were on their way to shop for items to redecorate Merriweather's new home. During trial, the state's first witness was Norton, who testified that she and Merriweather went shopping, stopped for something to eat, and then went back to Merriweather's house. At some point, the two women picked up a third woman and friend, Rhonda Hagwood ("Hagwood"), age 23.
Norton told the jury that at approximately 9:45 p.m. the three women were on their way to the Buckeye area to look for their boyfriends. Norton was driving Merriweather's father's car with Merriweather in the passenger seat and Hagwood in the backseat directly behind Norton. At 125th street and Buckeye, the women stopped to talk to two men they knew, Eddie Stovall and Melvin Oliver. Howard, age 19, came up to the car and asked Merriweather if she still wanted the money he owed her.
According to Merriweather, Howard owed her $80 for PCP dipped cigarettes he had bought months earlier. Merriweather told Howard that she wanted the money and was willing to drive him to a friend's house to pick it up. Howard and Oliver got in the backseat of the car with Oliver seated in the middle next to Hagwood and Howard seated behind Merriweather. Howard instructed Norton to drive to a house at 146th and Milverton and to pull into the driveway and park. Howard kept asking Merriweather if she was sure she still wanted what he owed her.
Once they were parked, Norton stated that she turned her head, looked at Howard and "I seen a gun with a black barrel and he shot and fired and hit me in my face." Norton testified that the gun was no more than six to eight inches away from her face when Howard shot her. Norton, in the front with Merriweather, stated that she never saw Merriweather with a gun in the car that night. Norton escaped from the vehicle and began running away when she heard two more gunshots and Howard yelling "kill that bitch." As she ran, Howard "kept shooting" and shot her in the back and right, lower leg. Norton told the jury that as she ran, she was spitting out blood and teeth onto the street. Testimony from Cleveland Police Detective Gary Garisek confirms that he found "a tooth * * * tissue and bone, blood" in the street. Norton was taken to the hospital by EMS.
At the hospital, it was determined that Norton had suffered a gunshot to her face which required a plate to be put in where her right jawbone used to be. Norton lost 9 teeth and had to have her tongue, which had been blown off, sewn back into her mouth. Norton also suffered a gunshot to the back and the lodged bullet was removed from her right chest area. Norton had also been shot in the right leg.
During trial, Merriweather confirmed much of Norton's testimony including the fact that Howard first shot Norton in the face. Merriweather also told the jury that after shooting Norton, Howard then shot her in the right hand. According to Merriweather, Hagwood "was the third shot she heard." Howard got out of the car and Merriweather heard more gunshots. Merriweather testified that all of the gunshots were fired in "maybe a minute and-a-half." Once Howard was outside the vehicle, Merriweather slid over to the driver's side and drove away. Hagwood died from one gunshot wound to the right side of her head.
Both Norton and Merriweather identified Howard as wearing a leather jacket and blue jeans the night of August 7, 1999. Forensic scientist Curtiss Jones told the jury that Howard's leather jacket and blue jeans both tested consistent with a firearm having been discharged in close proximity to them.
The state's next witness was Melvin Oliver (Oliver). Oliver testified that Howard told him about Merriweather's boyfriend, Douglas Littlejohn, making threats if Merriweather did not get her money. Oliver confirmed that Howard had "a black revolver" the night of August 7th. Oliver stated that he saw the gun in Howard's right hand and that Hagwood "had a hole in her head." Oliver testified that he heard "4 or 5" gunshots before he got out of the car. Once out of the vehicle, Oliver ran away, but not before seeing Norton "crawling" in the street.
Eddie Stovall ("Stovall") was the state's next witness. Stovall told the jury that Howard complained to him about Littlejohn making threats and that he was angry and said "[h]e going to fuck Doug up." Stovall testified that not only had Howard been smoking PCP the night of August 7, 1999, but he also saw him with a gun. Detective Tom Lucey ("Lucey") testified that four separate gun pellets related to the events of August 7th and 8th were all from the same weapon.
Howard took the witness stand in his own defense. Howard, however, described a different sequence of events than the other witnesses. On August 7th, Howard testified that he, Oliver, Stovall and another man were at Stovall's house when Merriweather arrived. Howard admitted that he owed Merriweather money for drugs, but claims that the amount was $250, not $80. According to Howard, Littlejohn had asked him for the overdue drug money on both August 5th and 6th. On one of these occasions, Howard stated that Littlejohn noticed a gold necklace and pendant he was wearing.
According to Howard, at Stovall's house, Merriweather offered him a deal in which she would take $100 and call it even. Howard said "okay" and asked for a ride to "Evan's" house so he could borrow the money. When they arrived at Evan's, Howard stated that before he could get out of the car, Merriweather asked to hold his gold chain and pendant as "collateral" while he was inside the house. Oliver, however, testified that he never heard any discussion about a necklace while he was in the car.
Howard refused to give Merriweather the necklace and claims that he "saw the side of a revolver come over the left side" of the front seat headrest. Howard testified that "I grabbed the gun, pulled her hand and it went off." According to Howard, Merriweather's finger was on the trigger when it fired towards the back where Hagwood was sitting. On cross, Howard altered his testimony by stating that the gun was originally aimed at him and even though it went off immediately, it never hit him or Oliver, who was sitting directly beside him. Howard took the gun out of Merriweather's hand and then Norton turned "real quick" and "I shot her in the face." On cross, Howard admitted that he not only shot Norton first but he shot her three times and that he fatally shot Hagwood "with the last shot." Afterwards, Howard got out of the car and ran down the street.
Howard was eventually arrested and indicted for the aggravated murder of Hagwood with a mass murder specification, two firearm specifications, and two counts of attempted aggravated murder with firearm specifications. Howard pled not guilty to all charges and the case proceeded to trial.
Before charging the jury, the trial court denied Howard's request for an instruction on self-defense finding the evidence insufficient to support such an instruction. Howard was convicted on the two charges of attempted murder related to Merriweather and Norton.[1] Howard was sentenced to ten (10) years on each count of attempted murder with the sentences to be served consecutively.[2] Howard timely appealed his convictions and presents two separate assignments of error for review.
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE A SELF-DEFENSE INSTRUCTION WITH REGARD TO THE TWO ATTEMPTED AGGRAVATED MURDER CHARGES.
In 1990, the Ohio Supreme Court in State v. Williford (1990),49 Ohio St.3d 247, 551 N.E.2d 1279, set forth the law relating to self-defense:
 Under Ohio Law, self-defense is an affirmative defense. (Citation omitted.) To establish self-defense, the defendant must show "* * *(1) [he] was not at fault in creating the situation giving rise to the affray; (2)* * *[he] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3)* * *[he] must not have violated any duty to retreat or avoid the danger.* * *" (Citation omitted.) The defendant is privileged to use that force which is reasonably necessary to repel the attack. (Citation omitted.) "If the defendant fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense." (Citation omitted.)
A trial court does not err in failing to instruct the jury on self-defense where the evidence is insufficient to support the instruction. State v. Palmer (1997), 80 Ohio St.3d 543, 687 N.E.2d 685;State v. Poole (July 5, 2001), Cuyahoga App. No. 78618, unreported, 2001 Ohio App. LEXIS 3020. In determining whether a defendant has introduced sufficient evidence to successfully raise the affirmative defense of self-defense, a reviewing court must evaluate the evidence, "which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." R.C. 2901.05[3]; State v.Melchior (1978), 56 Ohio St.2d 15, 381 N.E.2d 195; State v. Harris (June 7, 2001), Cuyahoga App. No. 78241, unreported, 2001 Ohio App. LEXIS 2562.
In the case at bar, Howard's claim of self-defense is founded upon his refusal to give Merriweather his gold necklace. Angry at his refusal, Merriweather then pointed a gun at him from the front seat of the car. The preponderance of evidence, however, shows that Howard was the only person with a gun under his control the night of August 7, 1999. Stovall told the jury that on August 7th Howard had a gun and was angry because of Littlejohn's threats. Oliver and Norton confirmed that Howard was the only one with a gun in the car. They also testified that Howard, not Merriweather, initiated and escalated the affray that occurred inside the vehicle. Norton told the jury that Howard's insistent question "are you sure you want what I owe you?" sounded peculiar and caused her to look toward the backseat when she immediately saw Howard pointing a gun at her face.
Further, there is no evidence to support Howard's story about the necklace. In fact, Oliver, the person sitting right beside Howard in the car, denied any mention of the necklace before gunshots were fired. Neither Merriweather nor Norton mentioned anything about the necklace either.
There is no evidence that Howard ever had a bona fide belief that he was in imminent danger of harm or that his only means of escape was the use of force. To the contrary, there was no evidence, forensic or otherwise, to support Howard's claim that Merriweather had a gun or, even if she did, that it was ever pointed at him. Moreover, Howard's version of the events does not offer any explanation as to why, even if Merriweather pointed a gun at him, he, purportedly acting in self-defense, ended up pointing it at Norton's face, Merriweather's right hand and then the right side of Hagwood's head. The evidence does not support Howard's claim that he was in imminent danger because all he had to do was open the door and leave the vehicle. Instead, Howard remained in the car long enough to shoot Norton, Merriweather, and Hagwood. Oliver confirms that Howard stayed in the car enough time to fire "4 to 5" shots. Further, Norton's gunshot wounds and the forensic evidence found on the street are consistent with her being shot at by Howard as she ran away from the car. None of these facts reasonably raises any issue about whether Howard was acting in self-defense.
Howard was not entitled to an instruction on self-defense because, contrary to what is required to prove the elements of self-defense, the evidence shows that Howard was the cause of the shootings and that instead of avoiding danger, he created it on August 7, 1999. Accordingly, the trial court did not err in failing to instruct the jury on self-defense. Howard's first assignment of error is overruled.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT IMPOSED MAXIMUM AND CONSECUTIVE SENTENCES.
Howard argues that the trial court erred in imposing both maximum and consecutive terms of incarceration for his convictions. We disagree with both claims. First, a maximum term of incarceration is proper under certain circumstances. R.C. 2929.14(C) permits the imposition of a maximum prison term for certain felony offenses:
 * * * The court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders* * *and certain repeat violent offenders* * *. Thus, to impose the maximum sentence, there must be a finding on the record that the offender committed one of the worst forms of the offense or posed the greatest likelihood of recidivism. (Citations omitted.) While the court need not use the exact language of the statute, it must be clear from the record that the trial court made the required findings. (Citation omitted.)
State v. Barker (Sept. 13, 2001), Cuyahoga App. No. 78965, unreported, 2001 Ohio App. LEXIS 4073 citing State v. Hollander, (July 5, 2001), Cuyahoga App. No. 78334, unreported, 2001 Ohio App. LEXIS 3029.
The trial court made the following statements before sentencing Howard:
 THE COURT: All right. Mr. Howard, the Court has, of course, listened to all of the testimony during the trial, and regardless of, you know, what the findings were by the jury, you will be sentenced according to those.
 However, in my mind, what I heard from the various witnesses and with respect to your conduct, it is this court's opinion that even for attempted murders, the way that this was conducted was the most serious type of attempted murder, in my view.
Do you understand me?
THE DEFENDANT: Yes.
 THE COURT: Further, in general, sentencing is to be imposed as necessary to protect the public and to punish the offender, but this court feels that your conduct in this incident and the danger that you pose to the public, as well as the fact that the harm in this instance was so great, that a single penalty, a single sentence, in my view, would not adequately reflect the seriousness of your conduct on that evening.
 This Court intends to impose and will impose consecutive sentences, fully representing each of the victims for which you were found guilty of attempted murder.
 With respect to Count 2, the victim being Charletta Norton, this Court imposes a prison term of ten years. And the maximum is being imposed, again, because of the seriousness of what I heard during the trial. Ten years at Lorain Correctional Institute.
 On Count 3, the victim being Valerie Merriweather, the Court imposes ten years at Lorain Correctional Institute.
 For the foregoing reasons, those sentences are consecutive.
 Further, they will be preceded by three years mandatory imprisonment for the firearm specification.
 The Court does find that it was one continuing incident. I am not imposing a consecutive firearm specification.
 However, the total there is 23 years imprisonment, Mr. Howard, and that is what the Court feels is a deserved penalty for what I heard during this trial.
* * *
The trial court's comments make it clear that it imposed the maximum prison terms because it found that Howard had committed the "most serious type of attempted murder." The trial court made the required findings and thus did not err in imposing the maximum term of imprisonment.
The next part of Howard's second assignment of error argues that he should not have received consecutive sentences. We do not agree with this claim either. In accordance with the strict sentencing guidelines set forth in R.C. 2929.14(E)(4), the trial court's imposition of consecutive sentences is proper. State v. Albert (1997), 124 Ohio App.3d 225,705 N.E.2d 1274 (imposition of consecutive sentences requires trial court to make all specific findings necessary under R.C. 2929.14(E)(4)[a]-[c]);State v. Lacey (Aug. 23, 2001), Cuyahoga App. No. 78448, unreported, 2001 Ohio App. LEXIS 3714; State v. Colon (Aug. 9, 2001), Cuyahoga App. No. 77779, unreported, 2001 Ohio App. LEXIS 3486.
R.C. 2929.14(E)(4) requires the trial court to make specific findings on the record before it can properly impose consecutive sentences. The statute states:
 (E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. (Emphasis added.)
The court must find that [1] consecutive sentences are necessary "to protect the public from future crime or to punish the offender and* * *[2] consecutive sentences are not disproportionate to the seriousness of the offender's conduct" and [3] they are not disproportionate "to the danger the offender poses to the public * * *." The court need not use the exact wording set forth in the statute, but it must satisfy the three requirements of this section. The court may also mention any of the criteria set forth in subsections (a)-(c) if it finds any of them applicable. See State v. Barker, supra.
In the case at bar, the trial court, upon sentencing, stated, in part:
 * * * it is this court's opinion that even for attempted murders, the way that this was conducted was the most serious type of attempted murder, in my view.
Do you understand me?
THE DEFENDANT: Yes.
 THE COURT: Further, in general, sentencing is to be imposed as necessary to protect the public and to punish the offender, but this court feels that your conduct in this incident and the danger that you pose to the public, as well as the fact that the harm in this instance was so great, that a single penalty, a single sentence, in my view, would not adequately reflect the seriousness of your conduct on that evening.
* * *
 * * * and that is what the Court feels is a deserved penalty for what I heard during this trial.
In the case at bar, the record belies Howard's claim that the trial court failed to articulate the necessary findings to impose consecutive sentences upon him. We are satisfied that the trial court sufficiently gave its reasons for imposing consecutive terms because it determined [1] that Howard's conduct was so dangerous that the public had to be protected and he "deserved" punishment, and [2] that the harm he inflicted "was so great" that consecutive sentences were not disproportionate because he had committed "the most serious type of attempted murder", and [3] that such service was not disproportionate to the danger he posed to the public. Howard's second assignment of error is overruled.
The judgment of the trial court is hereby affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., and TERRENCE O'DONNELL, J., CONCUR.
[1] The jury was unable to return a verdict on the additional charge for aggravated murder with a mass murder specification or the lesser included offense of murder relating to Hagwood. During a retrial for Hagwood's murder, Howard eventually pled guilty to the amended charge of murder with a firearm specification.
[2] For Hagwood's murder, Howard received a sentence of fifteen (15) years to life with an additional three years on the gun specification.
[3] In part, the statute states: "* * *The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused."