OPINION
{¶ 1} Defendant-appellant, Christopher L. Jones, appeals from the May 6, 2002 judgment entry of the Franklin County Court of Common Pleas finding him guilty of murder and sentencing him to an aggregate term of 18 years to life. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On October 25, 2001, appellant was indicted on one count of murder with specification for the shooting death of Anthony Snow. Appellant's trial began on April 15, 2002, and lasted until April 19. Appellant testified in his own defense.
 {¶ 3} In September 2001, appellant and Snow traveled to Los Angeles, California to meet some individuals in the music production business. According to appellant, on their way back from L.A. to Columbus, Ohio, Snow asked appellant to transport drugs in appellant's suitcase. Appellant refused, and Snow got upset with him. Shortly after returning from L.A., Snow telephoned appellant and left threatening messages on appellant's answering machine. Appellant testified that Snow threatened him and his mother, and that he did not know why Snow would make such threats. (Tr. 447.)
 {¶ 4} After listening to the recorded message, appellant and his cousin decided to go over to Snow's home to inquire as to why Snow was threatening appellant. Appellant testified that he carried a gun in the pocket of his hooded sweatshirt. (Tr. 454.) Appellant testified that when he arrived at Snow's house, they did not argue and Snow did not threaten appellant.
 {¶ 5} Appellant testified that after he thought the matter was resolved, he and his cousin walked out of the house. (Tr. 461.) According to appellant, Snow followed appellant outside only wearing a t-shirt. Once outside, the conversation about making threats surfaced again. Snow asked appellant if he had a gun. Appellant lied and replied no. Appellant testified that Snow returned back into the house. At that point, appellant and his cousin proceeded to walk down the alley. Snow came out of the house, and as he jogged down the alley, he called out appellant's name. When appellant turned around, Snow grabbed his sweatshirt. Appellant testified that as Snow was approaching him, he observed that Snow was now wearing a hooded sweatshirt, and his hand was behind his back. (Tr. 467.) Appellant saw a gun in Snow's hand. Appellant got scared, pulled out his gun and shot Snow six times, then turned around and ran away. Appellant was arrested later that morning at a Sunoco gas station.
 {¶ 6} Angela Brulee, Snow's girlfriend, testified that when Snow, appellant and appellant's cousin exited the house, Snow had already put on his hooded sweatshirt. (Tr. 385, 387, 389, 422.) Within seconds of the three men walking outside, Brulee heard gunshots. She ran outside and saw Snow hanging onto appellant's upper body. She then saw appellant hit Snow on the head with the gun. Snow fell down and appellant fell on top of him. According to Brulee, appellant started going through Snow's pockets. Brulee observed that Snow was not moving. Snow eventually turned to his side, looked up at Brulee and stated, "Angie, tell them I don't have no heat on me. Tell them I don't have no heat on me." (Tr. 391.) All the while appellant was still searching through Snow's pockets. Eventually, appellant took off running down the alley with the gun in his hand. Brulee testified that she took off down the street yelling, "he doesn't have no heat on him." (Tr. 391.)
 {¶ 7} On April 19, 2002, the jury found appellant guilty of murder. Appellant was sentenced to 15 years to life with an additional three years for the gun specification, to be served consecutively. It is from this judgment that appellant appeals, assigning the following as error:
 {¶ 8} "Assignment of Error I:
 {¶ 9} "Trial counsel's failure to have the victim's clthing [sic] examined for the presence of soot or stippling by a forensic examiner prior to trial constitutes ineffective assistance of counsel and thus deprives appellant of his rights as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 10} "Assignment of Error II
 {¶ 11} "The trial court comitted [sic] plain error and deprived appellant of due process of law as guaranteed by theFourteenth Amendment to the United States Constitution and comparable provision of the Ohio Constitution where the trial court makes conclusary [sic] statements as to the evidence presented where such findings are solely within the discretion of the triers [sic] of fact."
 {¶ 12} In his first assignment of error, appellant contends that his defense counsel's performance was deficient because counsel did not have Snow's clothing examined by the coroner or a forensic scientist prior to trial in order to determine the presence of soot or stippling. At trial, appellant raised the affirmative defense of self-defense. Appellant contends that defense counsel's failure to provide expert testimony to substantiate appellant's claim of self-defense prejudiced appellant and deprived him of a fair trial.
 {¶ 13} In order to prevail on his claim of ineffective assistance of counsel under Strickland v. Washington (1984), 466 U.S. 668, 686, appellant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1998), 80 Ohio St.3d 670, 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Strickland at 686.) Thus, a two-part test is necessary to examine such claims. First, appellant must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. State v. Keith (1997), 79 Ohio St.3d 514, 534. Second, appellant must show that but for the counsel's errors, there is a reasonable probability that the results of the trial would be different. Id.
 {¶ 14} The burden of showing ineffective assistance of counsel is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675. Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558 ("Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel"); State v. Carpenter (1996),116 Ohio App.3d 615, 626 (court of appeals is to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). Applying these standards, we find that appellant has failed to show that his counsel was ineffective.
 {¶ 15} It is generally a legitimate trial strategy for defense counsel not to request appointment of a forensic expert and, instead, rely on the cross-examination of the state's expert witness to rebut evidence of a crime. State v. Hendrix (Sept. 17, 2001), Butler App. No. CA2000-03-054; State v. Glover, Clermont App. No. CA2001-12-102, 2002-Ohio-6392, at ¶ 25. "[S]uch a decision by trial counsel is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant." Id.
 {¶ 16} In this case, on direct, Patrick Fardal, M.D., of the Franklin County Coroner's office testified that, "[a]ll the wounds, I saw none of them had soot or stippling. So all of them on the body that I saw would have been distant wounds." (Tr. 250.) A review of the record indicates that appellant's defense counsel thoroughly cross-examined the coroner. Defense counsel was able to establish that the coroner could not conclusively determine the distance between the handgun and the victim. On cross-examination, appellant's defense counsel had Dr. Fardal explain the terms "soot" and "stippling":
 {¶ 17} "Soot is presence of completely burnt gunpowder that's around an entrance gunshot wound when the muzzle-target distance is six inches or less. This has a fine ashen appearance to it. If you take a wet rag, et cetera, and wipe it off, you can actually wipe this soot away.
 {¶ 18} "If you put the gun up directly up against somebody, or people that take their own lives, then the soot actually gets deposited in the depth of the tissue. It actually gets blown into the wound along with the bullet. So as for most hand guns this is usually deposited at a distance of six inches or less.
 {¶ 19} "And as I alluded to before, clothing can effectively filter out this material.
 {¶ 20} "Stippling is the presence of unburnt gunpowder material on the skin or on the clothing. Again for most handguns it's usually less than two to three feet away. And this has unburnt pieces of gunpowder larger than the stuff that makes the soot. So this actually has an ability to make little scratches in your skin, abrasions. So if you wash this off with a wet sponge, et cetera, the little abrasion still remains there on the body. So you can wash the soot away but you can't wash the stippling away.
 {¶ 21} "So if we see that on a body or on clothing, then we would say it was within two to three feet and if we don't see it, then we'd have to say the muzzle-to-target distance is greater than two to three feet or there was something between the muzzle and the object it struck to effectively filter it out." (Tr. 269-270.)
 {¶ 22} Dr. Fardal further stated that the victim's clothing was not presented to him in order to be examined for the presence of stippling. As a result, he was unable to give a scientific opinion of the distance between the muzzle of the barrel and the victim. Dr. Fardal stated that he only had the victim's body to work with.
 {¶ 23} After reviewing the record, we determine that the decision of appellant's trial counsel in not having the coroner or a forensic expert examine Snow's clothing did not constitute a deficient performance. Dr. Fardal testified that based on his examination of only Snow's body, he saw no evidence of soot or stippling. However, Dr. Fardal was unable to form a scientific opinion of the distance between the muzzle of the barrel and the victim because he only had the body and not Snow's clothing to examine. We cannot say that defense counsel's conduct fell below an objective standard of reasonableness. Had Snow's clothing been tested and a there was no positive result for soot or stippling, it would have harmed appellant's case on his claim of self-defense. There is the possibility that the state's case would have been strengthened by the examination of Snow's clothing. Appellant's speculation that a prior examination of Snow's clothing would have changed the outcome of his trial is pure speculation. Defense counsel's decision falls within the purview of trial strategy and does not constitute ineffective assistance of counsel. State v. Varner (Sept. 14, 1998), Stark App. No. 98CA00016.
 {¶ 24} Appellant contends he acted in self-defense. State v. Melchior (1978), 56 Ohio St.2d 15, established the standard for self-defense. The following elements must be present: (1) appellant was not at fault in creating the situation; (2) appellant had a bona fide belief that he was in imminent danger of death or great bodily harm; and (3) appellant must not have violated any duty to retreat or avoid the danger. Id. at 20-21. If reasonable minds could only conclude that appellant acted in self-defense, his conviction must be reversed.
 {¶ 25} While appellant testified that he acted in self-defense, this record is replete with evidence to the contrary. Appellant went over to Snow's house with a gun in his possession. At the point Snow approached appellant, appellant testified that Snow had a gun. However, no corroborative evidence was presented to demonstrate that Snow had a gun in his possession at the time of the shooting. Brulee testified that Snow told her that he did not have a gun. Furthermore, the jury may choose to disbelieve appellant and conclude that the truth is that appellant did not act in self-defense. The evidence supports the jury's conclusion that appellant did not act in self-defense. Appellant did not retreat but, instead, stood in the alley and waited as Snow approached him. Testimony was presented that appellant fired at Snow from behind at least two times. Examination of Snow's body, along with an examination of the entrance and exit wounds revealed that Snow was either leaning over, lying on the ground, or in a crawling position when at least some of the shots were fired. (Tr. 279.) Under the facts presented at trial for appellant to have prevailed on the theory of self-defense, he must have convinced the jury by a preponderance of the evidence. Appellant has failed to demonstrate, by the preponderance of evidence, that he acted in self-defense. As such, appellant's first assignment of error lacks merit, is not well-taken, and is overruled.
 {¶ 26} In his second assignment of error, appellant contends that the trial court erred in answering a question presented by the jury regarding self-defense. "[W]here, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request. A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion." State v. Carter (1995),72 Ohio St.3d 545, 553.
 {¶ 27} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. An abuse of discretion implies a decision that is without a reasonable basis or clearly wrong. Pembaur v. Leis (1982),1 Ohio St.3d 89; Wise v. Ohio Motor Vehicle Dealers Bd. (1995),106 Ohio App.3d 562; and In re Ghali (1992), 83 Ohio App.3d 460.
 {¶ 28} In this case, appellant contends that the trial court committed error with the following statement:
 {¶ 29} "Now, you want to know where does this incident start. And you gave me three different alternatives. And the last alternative is probably the most appropriate alternative: Is it up to each person's interpretation as to when it begins. When you're trying to look at whether a defense of self-defense is established, you have to look at all of the circumstances. You have to look at all the facts and circumstances giving rise to the issue that you're supposed to decide. I don't think in this case it's one exact point in time. You have to look at all the facts and circumstances surrounding what led up to the actual shooting itself." (Tr. 575-576.)
 {¶ 30} Defense counsel raised an objection to the trial court's response to the jury question requesting an instruction that the incident started at the point when appellant was leaving the house and Snow came out of the house, thereby creating the situation. The trial court did not give such a limited instruction. We find that the trial court acted within the scope of its discretion in instructing the jury to consider all the facts and circumstances that were relevant to the issue of self-defense. The instructions were sufficiently cautionary to alert the jury to consider all evidence surrounding the manner in which the shooting took place. An instruction that the incident started at one particular point may not have been advantageous to appellant's defense. Appellant certainly wanted the jury to consider the threats that led up to the confrontation between appellant and Snow. However, the trial court clearly explained to the jury that it was up to each individual juror to determine when the incident began. In addition, when the jury asked its question, the trial court clearly explained that it could not answer questions by giving the jury more information than they were already given. Appellant has not demonstrated that the response to the jury question was erroneous or an abuse of discretion. As such, appellant's second assignment of error is not well-taken and is overruled.
 {¶ 31} For the foregoing reasons, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE, P.J., and BROWN, J., concur.