Si-iaw, Judge,
dissenting.
{¶ 9} I respectfully dissent from the majority decision to reverse this case based on the trial court’s failure to instruct the jury on self-defense. The majority correctly states that a trial court may omit any requested instructions *383 that are not correct statements of the law and applicable to the case before it. State v. Scott (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55. Further, as noted by the majority, “ ‘[i]n order * * * to successfully raise an affirmative defense * * * evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come.’ ” State v. Melchior (1978), 56 Ohio St.2d 15, 20, 10 O.O.3d 8, 381 N.E.2d 195, quoting State v. Robinson (1976), 47 Ohio St.2d 103, 111-112, 1 O.O.3d 61, 351 N.E.2d 88. The court in Melchior also stated that “[ejvidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of self-defense. * * * If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.” (Emphasis added.) Id. at 20.
{¶ 10} At trial, Belanger requested an instruction on the affirmative defense of self-defense, which required him to show, inter alia, that he had a bona fide belief that he was in imminent danger of bodily harm. See Melchior, 56 Ohio St.2d at 20-21, 10 O.O.3d 8, 381 N.E.2d 195. The majority found that Belanger testified that the victim hit him in his injured shoulder, causing him pain, during an argument the two were having. The majority then states that Belanger “testified that he pushed the victim away, causing her to fall, because he did not ivant to be struck again” and that he provided an explanation about how the marks on the victim’s neck could have occurred. Thus, the majority concludes that Belanger met his burden of production to raise the question of self-defense, which would warrant such an instruction to the jury. I disagree.
{¶ 11} Contrary to the majority’s view of the evidence, a review of the record reveals that the only testimony Belanger gave regarding a bona fide belief that he was in imminent danger of bodily harm was during his direct examination by defense counsel:
Q: And did you, uh, were you concerned if she hit you a second time that you’d be injured?
A: More than likely, but, you know.
No question was asked and no testimony was given by Belanger that relayed that he did not want to be struck again, that he feared that he would be struck again, or in any other way that he had a bona fide belief that he was in imminent danger of bodily harm. The record is devoid of any evidence that the victim made any further movements towards Belanger or that he even had a belief that she was going to harm him again. The question posed by defense counsel was a hypothetical: “Were you concerned that if she hit you a second time you would be injured?” The question was not “were you concerned that she would hit you a second time?”
*384 {¶ 12} More importantly, Belanger never testified that he knowingly acted to defend himself and in fact, seemed to carefully avoid any implication of deliberate conduct on his part. On the contrary, Belanger’s testimony about what happened was more akin to a defense of accident, i.e., he seemed to emphasize that he did not “knowingly” cause or attempt to cause physical harm to anyone.
{¶ 13} Specifically, Belanger testified that he was trying to explain to the victim, his live-in girlfriend, that he was concerned for her safety due to an incident that happened earlier that day and that someone might harm her because of her relationship to him. The argument became more heated, according to Belanger, because the victim repeatedly told him that she did not care. Belanger explained that he “was wanting to talk to her and then [he] got hit” by the victim in his right shoulder, which hurt because of a previous injury he had. Belanger further stated:
It happened so quick, the only thing I can think of is that I pushed her like that and when she was in her stocking feet on a linoleum floor that’s when she fell, her feet had kicked mine out from me and we landed up on top of each other. All I could remember her saying is, “ow, my eye,” so I don’t know if she hit it on the counter, the drawer that was open or on the floor.
The fridge stopped me from falling and, then, I came back up, it just happened so quick. I pushed her, my hand may have gone up, caught her neck but she went down, her feet kicked my feet out and we both landed on the floor on top of each other.
{¶ 14} Nothing in this testimony indicated that Belanger believed that he was knowingly defending himself from imminent bodily harm rather than merely reacting to the harm previously inflicted upon him and accidentally falling on the victim in some kind of mutual pushing incident. Thus, I do not find that Belanger presented sufficient evidence to create a reasonable doubt of guilt based upon any of the essential elements necessary for a claim of self-defense. At most, his testimony generated only a mere speculation or possible doubt. As previously noted, such evidence is insufficient to raise or establish this affirmative defense.
{¶ 15} For all of these reasons, I would conclude that the trial court did not err in overruling Belanger’s request to submit this issue to the jury. Accordingly, I would affirm the judgment of the trial court.