This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Steven Clifford has appealed from a judgment of the Summit County Court of Common Pleas that found him guilty of one count of domestic violence in violation of R.C. 2919.25. This Court affirms.
 I
{¶ 2} On July 21, 2001, Akron police were called to the scene of an altercation between Appellant and Ms. Diltra Hilton. As a result of the incident, Appellant was indicted by the Summit County Grand Jury on one count of domestic violence. Appellant entered a plea of not guilty to the charge, and the case proceeded to trial.
{¶ 3} At trial, Officer Vought testified that on July 21, 2001, he responded to a domestic violence call in front of a residence on Leonard Street. When he arrived, Ms. Hilton was being treated by EMS. Officer Vought testified that he observed bleeding from Ms. Hilton's left hand, abrasions on her head, and a fresh bite mark in her back. The officer also noticed that Ms. Hilton was missing her dental plate, which was lying on the sidewalk alongside teeth that were broken off from the fixture. Officer Vought testified that according to Ms. Hilton, she and Appellant had been out having a few drinks, and returned to the house of Sharon Cole. When they arrived at Ms. Cole's home, Ms. Hilton told Appellant that she intended to stay at Ms. Cole's house for the night, and began to exit the car. Ms. Hilton told Officer Vought that this information made Appellant angry and upset with Ms. Hilton, and he tried to pull her back into the car. According to the officer's testimony, Ms. Hilton said that when she refused to stay in the car, Appellant punched her repeatedly in the face and about the body, threw her to the ground, kicked her, and bit her.
{¶ 4} Officer David Crockett, who was on patrol with Officer Vought on the night of the incident, reiterated Officer Vought's testimony regarding the injuries apparent on Ms. Hilton's hand, head, and mouth. Officer Crockett also testified that he spoke with Ms. Cole after the officers arrived at the scene, and she told him that she observed Appellant punch Ms. Hilton in the mouth and teeth fly out of her mouth. According to Officer Crockett, Ms. Cole stated that she saw Appellant throw Ms. Hilton to the ground "like they do in wrestling." Officer Crockett also identified a photograph that he took at the scene, which showed Ms. Hilton's broken dental plate and four broken teeth lying on the sidewalk in front of Ms. Cole's house. Officer Crockett testified that the broken plate corresponded to the hole in Appellant's mouth where teeth were missing.
{¶ 5} Ms. Hilton was the next witness at trial. Ms. Hilton described the same sequence of events that Officer Vought testified she related to him at the scene: she told Appellant that she intended to stay at Ms. Cole's house, Appellant became angry and tried to keep her in the car, and then Appellant became violent. Ms. Hilton testified that after a struggle, she was able to get out of the car, and then Appellant exited the car and attacked her. She stated that she ran toward Ms. Cole's house but Appellant caught her and knocked her down, and punched and kicked her. Ms. Hilton testified that her dental plate was broken during the tussle as a result of her being punched. She also stated that in addition to broken teeth, she sustained knots on her head and bites on her back and fingers. Ms. Hilton also admitted that she had been using drugs around the time of the incident, although not on the night of the scuffle with Appellant, and that she was currently receiving treatment for her drug problem.
{¶ 6} Appellant was the final witness at trial, and he offered a different version of the events leading up to the arrival of the police. Appellant testified that he was driving Ms. Cole and Ms. Hilton back to Ms. Cole's house from a party, and both passengers wanted Appellant to stop on the way so they could get some drugs. Appellant stated that he did make the requested stop, although he was unaware of its purpose, but no one answered the door so they all proceeded back to Ms. Cole's house. When they arrived, Appellant, still seated in the car with Ms. Hilton, began talking to her about her drug use. Appellant related that Ms. Hilton became angry when Appellant brought up the subject of drugs, and she began punching and hitting Appellant. Appellant testified that he grabbed her to prevent her from hitting him, and told her he "was through with her" and ordered her out of the car. According to Appellant, Ms. Hilton refused to get out of the car, so Appellant exited the vehicle and approached the passenger side to escort Ms. Hilton out. Appellant stated that when he took hold of her arm to pull her out of the car, she grabbed a chain from around his neck and broke it. Appellant testified that he finally removed her from the car, and then began looking in the grass for his broken chain. Appellant stated that as he was searching the grass, Ms. Hilton approached from behind with a stick and began striking him across the back. Appellant testified that he then grabbed Ms. Hilton and threw her to the ground, and Ms. Hilton responded by grabbing and biting his leg. Appellant testified that Ms. Hilton would not release her bite, so he struck her in the head. When Ms. Hilton still would not yield, Appellant stated, he finally bent down and bit Ms. Hilton in the back, whereupon she released his leg and he started to walk back to the car. Appellant testified that Ms. Hilton chased him and struck him in the back again, and he responded by chasing her back toward Ms. Cole's house, until eventually he was able to get away.
{¶ 7} A jury found Appellant guilty of one count of domestic violence, a fifth degree felony, and the trial court sentenced him to ten months in prison. Appellant has timely appealed, asserting six assignments of error. We have rearranged and consolidated Appellant's assignments of error to facilitate review.
 II Assignment of Error Number One
{¶ 8} In his first assignment of error, Appellant has argued that the trial court erred in refusing to instruct the jury on self-defense. Appellant has contended that Ms. Hilton's attacks created a reasonable belief that he was in danger of bodily harm, and he only responded to Ms. Hilton's attacks with enough force to separate himself from her and leave the premises.
{¶ 9} Pursuant to R.C. 2901.05(C), self-defense is an affirmative defense which must be proven by a preponderance of the evidence. Statev. Martin (1986), 21 Ohio St.3d 91, syllabus, affirmed, Martin v. Ohio
(1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267. "A defendant is justified in using non-deadly force when he reasonably believes that it is necessary to defend himself against the imminent use of unlawful force, and the force used is not likely to cause death or great bodily harm." State v. Woodall (May 29, 1996), 9th Dist. No. 17551, at 6, citingState v. Perez (1991), 72 Ohio App.3d 468, 472; see, also, State v.Dokes (1986), 31 Ohio App.3d 24, 25. A trial court need only instruct the jury on self-defense when the defendant "has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable [jurors] concerning the existence of such issue." State v.Melchior (1978), 56 Ohio St.2d 15, paragraph one of the syllabus. If the defendant fails to meet his burden of producing sufficient evidence of the elements of self-defense at trial, a jury instruction on self-defense is not warranted. Id.
{¶ 10} Appellant's own trial testimony contradicts his claim that he caused Ms. Hilton's injuries only in an effort to defend himself. Appellant denied ever punching or kicking Ms. Hilton in the mouth, or in any way causing the fracture of her dental plate or teeth. In addition, Appellant testified that he was angered by the fact that he was unable to make Ms. Hilton desist from biting his leg, and that his anger prompted him to bite her in the back. Appellant testified that he told Ms. Hilton, "If you want to bite, I can bite you back," whereupon he bent down and bit her in the back.
{¶ 11} Based upon Appellant's denials and express desire for revenge, Appellant failed to produce sufficient evidence at trial that his use of force was necessary to defend himself against the imminent use of unlawful force by Ms. Hilton. Consequently, the trial court did not err in refusing to instruct the jury on self-defense. Appellant's first assignment of error is not well taken.
 Assignment of Error Number Two {¶ 12} "APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THIS CASE."
{¶ 13} In his second assignment of error, Appellant has contended that his conviction for domestic violence was contrary to the manifest weight of the evidence.
{¶ 14} An appellant bears the burden of affirmatively demonstrating error on appeal. Ivery v. Ivery (Jan. 12, 2000), 9th Dist. No. 19410, at 2. To that end, the brief of an appellant must contain argument and law, with citations to the authorities, statutes, and parts of the record on which the appellant relies. App.R. 16(A)(7). If the party presenting an assignment of error for review fails to identify in the record the error on which it is based, this Court may disregard the assignment of error. App.R. 12(A)(2).
{¶ 15} Although Appellant cites multiple standards that may be generally applicable to reviewing whether convictions are against the manifest weight of the evidence, Appellant has failed to identify any parts of the record or cite to any legal authority that would support his second assignment of error. It is not the obligation of an appellate court to search the record for evidence to support an appellant's argument of an alleged error. State v. Watson (1998), 126 Ohio App.3d 316,321. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18.
{¶ 16} As Appellant did not cite to any legal authority or parts of the record to support this assignment of error, his unsubstantiated assertions cannot be considered as sufficient to carry his burden of demonstrating that his conviction was against the manifest weight of the evidence. Accordingly, this Court will not further address Appellant's second assignment of error.
 Assignment of Error Number Four {¶ 17} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A CONTINUANCE TO SECURE THE PRESENCE OF CRUCIAL DEFENSE WITNESSES; SAID ERROR CONSTITUTES AN ABUSE OF DISCRETION AND PREJUDICIALLY DEPRIVES DEFENDANT OF HIS CONSTITUTIONAL DUE-PROCESS RIGHTS TO A FAIR TRIAL."
{¶ 18} In his fourth assignment of error, Appellant has argued that the trial court erred in overruling his motion for a continuance, which counsel requested to allow time to interview and secure the testimony of two potential defense witnesses. Appellant has contended that the trial court's denial of his motion for a continuance constitutes an abuse of discretion, and "deprived him of his right to compulsory process pursuant to the Sixth and Fourteenth Amendments to the United States Constitution" and "Article I, Section 10 of the Ohio Constitution."
{¶ 19} During cross-examination of Appellant by counsel for the state, the following exchange took place:
 {¶ 20} "Q: Where did you go after you left [Ms. Cole's driveway]?
{¶ 21} "A: I went straight to my friend's house.
{¶ 22} "Q: Who is your friend?
{¶ 23} "A: The Feltons, Derrick and Linda Felton.
 {¶ 24} "Q: All right. You must have been pretty shaken up when you were there?
 {¶ 25} "A: It was their car and I was letting them know what had happened and I was showing them, telling them what happened. I showed them what had happened to me.
{¶ 26} "Q: Did they see what happened to you?
{¶ 27} "A: Yes, they seen —
{¶ 28} "Q: Did they see the injuries on you?
{¶ 29} "A: Yes.
{¶ 30} "Q: Are they going to testify today?
 {¶ 31} "A: They don't even know anything about this today. They are at work."
{¶ 32} Shortly thereafter, counsel for both parties addressed the court in a sidebar conference, at which Appellant requested a continuance in order to allow him time to interview the Feltons. At this conference, counsel for Appellant averred that "[these witnesses] are new to me as of five minutes ago." Appellant's counsel further stated: "I believe [the Feltons'] testimony would merely be to Mr. Clifford's testimony about the wounds that he sustained[.]" In opposing the request for a continuance, counsel for the state argued that the testimony Appellant was going to attempt to elicit from the Feltons would be inadmissible hearsay. After counsel for both parties argued the merits of the motion, the trial court denied the request for a continuance.
{¶ 33} The decision to grant or deny a continuance "is a matter that is entrusted to the broad, sound discretion of the trial judge."State v. Unger (1981), 67 Ohio St.2d 65, syllabus. `Abuse of discretion' connotes more than a mere error in judgment; it implies an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157. Moreover, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."Unger, 67 Ohio St.2d at 67, quoting Ungar v. Sarafite (1964), 376 U.S. 575,589, 84 S.Ct. 841, 11 L.Ed.2d 921.
{¶ 34} When evaluating a motion for a continuance, the trial court should balance a number of factors, including:
 "[T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." Unger, 67 Ohio St.2d at 67-68.
{¶ 35} In the case sub judice, Appellant was the last witness to testify at trial. His surprise revelation regarding the Feltons was elicited near the end of his testimony. Appellant's counsel stated on the record that he was moving for the continuance at twenty minutes before four `o clock in the afternoon; the court indicated at the time it was impaneling the twelve-member jury that court would "try to adjourn by 4:30" in the afternoon. In denying the request for a continuance, the court stated:
 {¶ 36} "All right, counsel, for the record it's 3:40. * * * I think by your own admission these witnesses have never been disclosed to the prosecution. * * * As of this late date, the court is not inclined, nor will I grant, any additional time. This is the day of the trial. * * * Tomorrow is my criminal call day, so I am not available tomorrow, in any event, to hear this matter."
{¶ 37} Contrary to Appellant's assertions on appeal, the record reveals that the trial court considered many of the factors set forth inUnger. The trial court clearly considered the potential inconvenience to all those involved in the litigation. See Unger, 67 Ohio St.2d at 67. In addition, Appellant's trial counsel argued that the Feltons' testimony would corroborate Appellant's statements regarding the injuries he allegedly sustained during the altercation with Ms. Hilton. However, Appellant's injuries were not at issue in the trial. While Ms. Hilton denied striking Appellant with a stick, she indicated that she did not recall whether she had bitten him at any time during the scuffle, and she admitted that she struck and kicked Appellant in her efforts to get away from him. The record does not indicate any suggestion by Appellant or his trial counsel that the Feltons observed the struggle between Appellant and Ms. Hilton. Nor does the record contain facts that would suggest an exclusion of or exception to the applicability of the hearsay rule, without which testimony by the Feltons regarding what Appellant told them about his altercation with Ms. Hilton would be inadmissible. See Evid.R. 802.
{¶ 38} Having thoroughly reviewed the record, we cannot conclude that the trial court abused its discretion in denying Appellant's motion for a continuance. Appellant's fourth assignment of error is without merit.
 Assignment of Error Number Three {¶ 39} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL."
{¶ 40} In his third assignment of error, Appellant has argued that he was denied the effective assistance of counsel at trial. Specifically, Appellant has contended that counsel failed to spend sufficient time with Appellant preparing the case, and as a result counsel was unaware of the existence of the Feltons, whose testimony might have supported Appellant's version of the events presented at trial.
{¶ 41} A two-pronged test must be satisfied to determine that the right to effective assistance of counsel has been violated:
 {¶ 42} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
{¶ 43} An appellant's demonstration of prejudice requires proof that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 16,111 L.Ed.2d 830. This Court must also consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The burden of proof is borne by the defendant, and he must overcome the strong presumption of the adequacy of counsel's performance and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100.
{¶ 44} Because this Court finds the prejudice component of theStrickland framework dispositive in this case, we will address only that aspect of Appellant's ineffective assistance claim. See State v. Loza
(1994), 71 Ohio St.3d 61, 83, certiorari denied (1995), 514 U.S. 1120,115 S.Ct. 1983, 131 L.Ed.2d 871. Assuming arguendo, therefore, that Appellant's counsel had called the Feltons as trial witnesses, Appellant has failed to demonstrate a reasonable probability that, based on their testimony, "the result of the trial would have been different." Bradley,42 Ohio St.3d 136, paragraph three of the syllabus. As more fully explained under Appellant's fourth assignment of error, the record shows that Appellant only intended to have the Feltons testify to the injuries they observed on Appellant after he left Ms. Cole's driveway. However, the fact that each party sustained injuries as a result of their struggle was not in dispute; the issue at trial was whether Appellant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A). Appellant and Ms. Hilton each presented conflicting accounts on this point, and the jury's verdict ultimately depended on whose version of events it found to be more credible. At no point has Appellant or his counsel contended that the Feltons observed the exchange of blows between Appellant and Ms. Hilton. We cannot conclude, therefore, that there is a reasonable probability that testimony by the Feltons regarding Appellant's injuries or appearance after the scuffle would have changed the outcome of the trial. Appellant's third assignment of error is without merit.
 Assignment of Error Number Five {¶ 45} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED A WITNESS' STATEMENTS TO A POLICE OFFICER TO BE ADMITTED UNDER THE EXCITED-UTTERANCE EXCEPTION TO EVID.R. 802, BECAUSE THE STATEMENTS WERE NOT THE RESULT OF THE WITNESS'S PERSONAL OBSERVATION OF THE INCIDENT."
 Assignment of Error Number Six {¶ 46} "BY IMPRIOPERLY ADMITTING HEARSAY EVIDENCE, THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO CONFRONTATION OF WITNESSES AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
{¶ 47} In his fifth assignment of error, Appellant has argued that the trial court erred in admitting Ms. Cole's statements to Officer Crockett pursuant to the "excited utterance" exception to the hearsay rule. Specifically, Appellant has contended that Ms. Cole did not personally observe the struggle between Appellant and Ms. Hilton, and her statements were therefore not admissible under Evid.R. 803(2).
{¶ 48} Generally, out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay. Evid.R. 801(C) and 802. However, Evid.R. 803 provides numerous exceptions to the hearsay rule. Evid.R. 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Such a statement is admissible despite its hearsay nature if the following four conditions are satisfied:
 {¶ 49} "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 {¶ 50} "(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 {¶ 51} "(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
 {¶ 52} "(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis sic.) State v. Wallace (1988), 37 Ohio St.3d 87, 89, quoting Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
{¶ 53} This Court reviews a trial court's decision regarding the admissibility of evidence under Evid.R. 803(2) for an abuse of discretion. State v. Elkins (Sept. 27, 2000), 9th Dist. No. 19684, at 11; see also Potter, 162 Ohio St. at 500. Abuse of discretion "implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." State ex rel. Shafer v. OhioTurnpike Comm. (1953), 159 Ohio St. 581, 590-91.
{¶ 54} Appellant has argued that Ms. Cole did not personally witness the altercation between Appellant and Ms. Hilton. However, Officer Crockett testified that Ms. Cole told him that she witnessed Appellant punch Ms. Hilton in the mouth and saw the teeth fly out of her mouth. According to Officer Crockett, Ms. Cole told him that she sent her daughter into the house when Appellant and Ms. Hilton were arguing outside, and Ms. Cole told both of them to stop fighting. She then witnessed Appellant punch Ms. Hilton in the mouth, and saw him throw her to the ground. Ms. Cole then ran inside the house and called 911.
{¶ 55} None of the other witnesses at trial denied that Ms. Cole observed the struggle between Appellant and Ms. Hilton. Appellant has cited testimony in which he stated that Ms. Cole was "lying" when she told Officer Crockett that she witnessed Appellant punch Ms. Hilton in the mouth. Appellant did not testify that Ms. Cole was not present during the struggle, however; he denied ever punching Ms. Hilton in the mouth, and stated that Ms. Cole was "lying" when she claimed to have seen him punch her. Appellant did state that Ms. Cole and her daughter and niece got out of the car and went into the house, but added "well, Sharon was getting the keys." Ms. Hilton, moreover, testified that she did not "remember exactly" whether Ms. Cole was in the car when the disagreement between Appellant and Ms. Hilton began.
{¶ 56} After reviewing the testimony presented at trial, we conclude that the record supports a finding that Ms. Cole was present during and personally observed the altercation between Appellant and Ms. Hilton. Accordingly, the trial court did not abuse its discretion in admitting the hearsay statements of Ms. Cole pursuant to Evid.R. 803(2). Appellant's fifth assignment of error is not well taken.
{¶ 57} In his sixth assignment of error, Appellant has argued that because Ms. Cole did not testify, his right to confront his accusers under the Constitution of the United States and the Ohio Constitution was violated. However, the admission of evidence under the excited utterance exception to the hearsay rule does not violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. See White v.Illinois (1992), 502 U.S. 346, 357, 112 S.Ct. 736, 116 L.Ed.2d 848; Idahov. Wright (1990), 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638. Nor does it violate the Confrontation Clause found at Section 10, Article I
of the Ohio Constitution. See State v. Johnson (Dec. 26, 1995), 4th Dist. No. 94 CA 2004, 1995 Ohio App. LEXIS 5845, at *24-26, appeal not allowed (1996), 76 Ohio St.3d 1405. Appellant's sixth assignment of error is without merit.
 III
{¶ 58} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J., CARR, J. CONCUR.