DECISION
{¶ 1} Appellant, Angela Lust, appeals from a judgment of the Franklin County Municipal Court finding her guilty of assault and sets forth the following assignments of error:
I. First Assignment of Error
The trial court erred upon finding defendant-appellant guilty of assault in violation of ohio revised code section 2903.13
where counsel for plaintiff-appellee failed to establish the prima facie case for assault in accordance with Ohio Revised Code Section 2903.13.
II. Second Assignment of Error
The trial court erred upon finding defendant-appellant guilty of assault in violation of Ohio Revised Code Section 2903.13
where the trial court judge implemented an incorrect standard of review with respect to defendant-appellant's affirmative defense of self defense.
III. Third Assignment of Error
The trial court erred upon finding defendant-appellant guilty of assault in violation of Ohio Revised Code Section 2903.13
where the trial court judge failed to consider defendant-appellant's defense of accident as set forth in the evidence.
IV. Fourth Assignment of Error
The trial court erred upon finding defendant-appellant guilty of assault in violation of Ohio Revised Code Section 2903.13
based upon insufficiency of the evidence or, in the alternative, as against the manifest weight of the evidence, and according to the plain error doctrine.
V. Fifth Assignment of Error
The trial court erred upon finding defendant-appellant guilty of assault in violation of Ohio Revised Code Section 2903.13 due to clear prosecutorial misconduct on behalf of counsel for plaintiff-appellee, and according to the plain error doctrine.
 {¶ 2} Elizabeth Lust, appellant's younger sister, shared a house with four other women, including Virginia Oswald, near The Ohio State University campus. A disagreement developed among the roommates as to how the rent should be divided with the four other women concluding that Elizabeth should pay a larger share because she had a larger room. Elizabeth claims the other women had stolen various items of personal property. As a result, in November 2003, appellant; appellant's mother, Jeanette Cope; and appellant's brother, Joshua Cope, were helping move Elizabeth out of the house.
 {¶ 3} While the family was moving Elizabeth's things out, Virginia Oswald came home, went to the kitchen and started cooking. According to Virginia, as appellant was leaving, she yelled at her about harassing Elizabeth, an allegation Virginia denied. Virginia stated she and appellant began to move toward each other until they were approximately six feet apart. At the same time, Mrs. Cope was coming down the stairs and told Virginia that all the roommates were being sued for theft of various personal items belonging to Elizabeth, including a missing poster. Virginia stated she knew where the poster was and got it from a landing at the top of the basement stairs and handed it to appellant. Virginia then testified:
* * * And I said, "Let me explain to you why I took the poster down and leaned it against the wall," and [appellant] said, "No. I don't want to hear about it. I don't want to know," you know, and that's when she hit me.
(Tr. at 26.)
 {¶ 4} Virginia testified appellant struck her in the left eye, causing the area around her eye and cheek to bruise and swell. Virginia called her landlord, who then contacted the Columbus Police Department. Approximately one week later, Virginia saw an eye doctor who found no damage.
 {¶ 5} Officer Matthew Marlette of the Columbus Police Department testified that, when he arrived at the house, Virginia was crying, her cheek was red and there was a scratch on her cheek.
 {¶ 6} Joshua Cope testified he was carrying the last of Elizabeth's things from the house and:
* * * I stopped because I heard Angela ask Virginia. She was like, "Where are all of my sister's stolen things?"
* * *
* * * Virginia, she was like, "I don't now what you are talking about." I mean, it started out okay, and then Angela was like, "You know we filed a police report about all of Elizabeth's missing things."
Virginia is like, "What?" She looked a little confused and she started raising her voice. And Angela started listing the things that were stolen. She was, like, where are some of these things? * * *
(Tr. at 87-88.)
 {¶ 7} One of the missing items was a poster that Joshua testified Virginia found and "[s]he pulled out one of the Cher posters, one of the missing things, and she pretty much just threw it right in front of my sister, who was standing a good five, ten feet away from her and [the poster] landed right in front of her feet." (Tr. at 89.)
 {¶ 8} He further testified both women started yelling and approached each other with arms flailing. He then picked appellant up and carried her out of the house while appellant and Virginia continued to shout at each other. Joshua and appellant drove to Elizabeth's new apartment and then decided to go to the police.
 {¶ 9} Mrs. Cope stated that Virginia became angry, found the poster and threw it at appellant. Mrs. Cope thought the poster had struck appellant, but she was not certain. Mrs. Cope said both women had their arms flailing, that Joshua carried appellant out of the house and that Virginia then struck and kicked Mrs. Cope. After a confusing series of actions, Mrs. Cope eventually ran back to Elizabeth's room and locked herself in, waiting for help to arrive.
 {¶ 10} Appellant testified on her own behalf and stated as she was leaving the house, she saw Virginia in the kitchen. Appellant testified that she did not know Virginia and had not seen her before. Appellant further testified that Virginia threw the poster at her and, as Virginia was approaching her, appellant put her arms in front of her face to protect herself because she felt threatened and scared. Appellant testified that Virginia hit her forearms. On cross-examination, appellant conceded that she extended her arms forward and could have hit Virginia in the eye. Appellant further testified that Virginia was very upset and angry, that appellant's brother carried her out of the house, and Virginia followed, yelling and shouting obscenities. Appellant and her brother drove to Elizabeth's new apartment, and then to the police. Appellant stated that the events took place in front of an open front door.
 {¶ 11} The trial court found appellant guilty of assault, stating in part:
* * * [T]he defendant's witnesses['] testimony was so convoluted and contradictory that the Court gives it very little credence at all. * * * From all of the testimony, frankly the Court's opinion is the most credible testimony was that of the prosecuting witness, Virginia Oswald. * * *
(Tr. at 189.)
 {¶ 12} The trial court imposed a $500 fine with a two-year period of probation, and a requirement of 80 hours community service.
 {¶ 13} In her first and fourth assignments of error, appellant argues that her conviction was not sustained by sufficient evidence and was against the manifest weight of the evidence because the state failed to prove beyond a reasonable doubt that she knowingly caused or attempted to cause physical harm to Virginia.
 {¶ 14} The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380,386.
 {¶ 15} The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594). Thompkins, at 387.
 {¶ 16} The existence of conflicting evidence does not render the evidence insufficient as a matter of law. State v. Murphy
(2001), 91 Ohio St.3d 516, 543; nor, is a conviction against the manifest weight of the evidence solely because the jury heard inconsistent testimony. State v. Kendall (June 29, 2001), Franklin App. No. 00AP-1098. The trier of fact makes determinations of credibility and the weight to be given to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 17} Appellant was charged with a violation of R.C.2903.13(A), which provides in part:
(A) No person shall knowingly cause or attempt to cause physical harm to another * * *.
 {¶ 16} R.C. 2901.22(B) defines "knowingly" as:
(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 17} Appellant does not argue that Virginia did not suffer physical harm, only that the state failed to prove she acted knowingly.
 {¶ 18} The trial court specifically found Virginia to be a credible witness, and appellant and her witnesses not to be credible. The evidence of Virginia alone provided sufficient evidence that appellant acted knowingly when Virginia testified she handed the poster to appellant, and appellant hit her once in the left eye. Appellant, herself, on cross-examination, admitted extending her arm as Virginia approached her and that she could have hit her in the eye. Therefore, there was sufficient evidence that appellant knowingly struck Virginia and such a finding is not against the manifest weight of the evidence. Appellant's first and fourth assignments of error are overruled.
 {¶ 19} In her second assignment of error, appellant argues that the trial court applied the wrong standard of proof to her affirmative defense of self-defense. In Ohio, self-defense is an affirmative defense that the accused must prove by a preponderance of the evidence. R.C. 2901.05. Appellant has failed to direct this court to where the alleged error is reflected in the record and a review of the record does not support appellant's argument. In State v. Robbins (1979),58 Ohio St.2d 74, paragraph two of the syllabus, the Ohio Supreme Court held:
To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. (State v. Melchior,56 Ohio St.2d 15, approved and followed.)
 {¶ 20} The trial court fully considered the defense of self-defense and stated:
* * * [T]he Court is amazed that a person of the defendant's education and background would not leave the house in question. And why would she confront someone whom she has no idea who she is? She testified she had never met any of the roommates that lived in this house with her sister, and yet she sees a woman standing in the kitchen, doesn't know who she is, and makes a statement as to, "Where are my sister's stolen items," and, "Do you know that there is a police report that has been filed?"
* * *
* * * The Court finds that the defense of self-defense is not shown in this case * * *.
(Tr. at 188-189.)
 {¶ 21} Thus, the trial court found appellant was responsible for creating the situation and failed to retreat or avoid danger by simply leaving the house. There is nothing in the record to show the trial court applied the wrong burden of proof. Appellant's second assignment of error is overruled.
 {¶ 22} In her third assignment of error, appellant argues that the trial court failed to consider her defense of accident. Appellant failed to raise the defense of accident in the trial court and cannot raise it on appeal for the first time. In response to a statement by the prosecutor before the trial commenced, appellant's counsel stated:
* * * It's our defense that Miss Lust was attacked, and her defense is self defense as to the charges.
(Tr. at 7.)
 {¶ 23} Even assuming appellant raised the issue in the trial court, accident and self-defense are mutually exclusive defenses.State v. Barnd (1993), 85 Ohio App.3d 254. Appellant's third assignment of error is overruled.
 {¶ 24} In her fifth assignment of error, appellant argues the prosecutor committed misconduct during a bench conference by referring to evidence he sought to introduce concerning a mediation conference between Mrs. Cope and Virginia, repeatedly testifying in the guise of asking questions and stating appellant's witnesses were lying during closing argument. Appellant did not object during the bench conference or closing argument.
 {¶ 25} Although generally a court will not consider alleged errors that were not brought to the attention of the trial court, Crim.R. 52(B) provides that the court may consider errors affecting substantial rights even though they were not brought to the attention of the trial court. "`Plain error is an obvious error * * * that affects a substantial right.'" State v.Yarbrough, 95 Ohio St.3d 227, 244, 2002-Ohio-2126, at ¶ 108, quoting State v. Keith (1997), 79 Ohio St.3d 514, 518. An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. Yarbrough, at 244-245. "Notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28.
 {¶ 26} The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial.State v. Apanovitch (1987), 33 Ohio St.3d 19, 24.
 {¶ 27} A presumption exists that, in a criminal case tried by the court, the court considers only the relevant, material and competent evidence in arriving at its decision unless it affirmatively appears to the contrary. State v. Post (1987),32 Ohio St.3d 380, 384, certiorari denied, Post v. Ohio (1988),484 U.S. 1079, quoting State v. White (1968),15 Ohio St.2d 146, 151.
 {¶ 28} During the course of a bench conference, the prosecutor stated he wanted to introduce evidence of a mediation between Mrs. Cope and Virginia as evidence of the witnesses' credibility. The court stated:
* * * I don't think I want to go into the mediation on somebody else's charges, but you can always bring this witness back on rebuttal. If Miss Cope comes in and takes the stand, you can ask her. And then if she denies it, you can bring back this witness * * *.
(Tr. at 35.)
 {¶ 29} There is nothing in the record to even suggest the trial court was influenced by any statements as to a mediation attempt between the parties and certainly nothing to support appellant's argument that "[d]uring this 'sidebar,' the trial court judge clearly made up his mind as to the outcome of Angela's case (i.e., guilty)." (Appellant's brief at 38.)
 {¶ 30} Appellant has failed to demonstrate error, let alone plain error.
 {¶ 31} Next, appellant argues that the prosecutor either testified or asked questions based on his own personal knowledge. Many of these questions were of little value and went to the issue of whether the state's witnesses were coached by the prosecutor. There were instances in which appellant's attorney objected and the objections were sustained. There is no affirmative showing in the record that the questions had any influence on the trial judge who, on more than one instance, admonished the prosecutor that his point had been made and to move on with his evidence.
 {¶ 32} Last, the state concedes it was improper for the prosecutor to state appellant's witnesses were lying, but there is no affirmative showing that this one statement influenced the trial court or deprived appellant of a fair trial. Again, appellant has failed to show plain error.
 {¶ 33} Appellant's fifth assignment of error is overruled.
 {¶ 34} For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
Lazarus, P.J., and Bryant, J., Concur.