[Cite as *State v. Sherrell*, 2016-Ohio-1177.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | |
| -vs- | Case No. 2015CA00086 |
| LEISHA VEDORA SHERRELL | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from Canton Municipal Court, Case
                             No. 2014CRB4633

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      March 21, 2016

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOSEPH MARTUCCIO                      KRISTINE W. BEARD
Canton Law Director                   4450 Belden Village St. N.W.
                                      Suite 703
TYRONE D. HAURITZ                     Canton, Ohio 44718
Canton City Prosecutor

TASHA FORCHIONE
Assistant City Prosecutor
218 Cleveland Ave., SW
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1}   Defendant-appellant Leisha Sherrell appeals her conviction and sentence entered by the Canton Municipal Court on one count of criminal damaging, in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree, following a jury trial.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On October 14, 2014, Appellant was charged with assault, in violation of R.C. 2903.13(A), and criminal damaging, in violation of R.C. 2909.06(A)(1).  Appellant appeared before the trial court for arraignment on October 17, 2014, and entered a plea of not guilty to the charges.

{¶3}   The matter proceeded to jury trial on April 7, 2015.  Jerry Schupbach testified he and his wife reside at 914 Seventh Street, NE, Canton, Ohio.  The Schupbachs have resided at the address for approximately five years, and recently purchased additional land, a fifty-five square foot lot located behind their home, through the Stark County Side Lot Program.  Schupbach obtained updated copies of the mapping and surveys of the land.  Schupbach also applied for and received a permit from the City of Canton to build a barrier and fence around the lot.  A county worker marked the boundary of the land with a metal pole.  Schupbach used the metal pole to determine the boundary for his fencing barrier.

{¶4}   On September 25, 2014, Schupbach began building the barrier using plastic fencing material.  He attached the material to the metal pole.  While he was taking a break inside his home, Schupbach noticed Appellant, his neighbor, using a knife to tear down the fencing material.  The Schupbachs have a large double window which provides an

unobstructed view of their new land.  Schupbach went outside to speak with Appellant and to prevent her from doing further damage.  When Schupbach approached Appellant, she began arguing and swinging the knife while she continued to cut down the fencing. Schupbach explained to Appellant he had purchased the land through the Stark County Side Lot Program, had had the land surveyed, and had a permit to establish a barrier and build a fence.  Appellant informed Schupbach he was not putting up the fence. Schupbach testified he spoke to Appellant in a calm, non-threatening manner and did not raise his voice.  Schupbach described Appellant as out of control, raising her voice and making threatening remarks.

{¶5}    Appellant continued to cut and destroy the fencing material as Schupbach tried to talk to her.  Schupbach reached down to pick up the materials, hoping to prevent Appellant from doing further damage.  As he stood up, Appellant struck him in the shoulder with the knife.  Schupbach, an Air Force veteran trained in self-defense, attempted to block Appellant.  Schupbach contacted the Canton Police Department at approximately 3:00 pm to report the incident.  Officer Anthony Jackson and Officer Scott Dendinger were dispatched to Schupbach's residence.  Due to the crime in the neighborhood, Schupbach had installed surveillance videos in the front and back of his home.  The surveillance video captured the entire incident.  Schupbach played the video for Officer Jackson.  The video was played for the jury.

{¶6}    The video depicts Schupbach erecting the fencing material along the edge of his land.  Schupbach stops working, and he is no longer observed in the video. Thereafter, Appellant appears in the video and is seen cutting the material with a large knife.  Schupbach reappears.  Appellant approaches Schupbach, pointing the knife at

him.   Schupbach speaks with Appellant and indicates the boundaries of the land. Appellant and Schupbach appear to exchange words then Appellant again starts to cut and destroy the fencing material.   Schupbach begins to pick up the material, and Appellant strikes him with the knife.   Thereafter, she walks away.   A Canton Police Department cruiser arrives.

{¶7}   Schupbach informed Officer Jackson he had had the land surveyed and a county worker had marked the boundaries with the metal pole.   Schupback provided Officer Jackson with the survey and mapping paperwork.   Officer Jackson testified, based upon the paperwork, Schupbach had every right to erect the fence.   Schupbach did not want to press any charges against Appellant.

{¶8}   While Officer Jackson spoke with Schupbach, Officer Dendinger spoke with Appellant.   Appellant explained she cut down the fencing material because it was blocking her exit gate.   Appellant told the officer Schupbach came outside and confronted her. Appellant continued, stating Schupbach tried to grab her, and when he did, she pushed him away. Appellant admitted to Officer Dendinger a surveyor for the city had come out and placed a metal post on the property line.   Appellant acknowledged her fence was across the property line, but indicated the surveyor told her not to take down her fence until further studies were completed.

{¶9}   After speaking with Schupbach and Appellant, the officers advised Schupbach to contact the Canton City Prosecutor's Office if he wished to pursue charges against Appellant.   The officers left.   Approximately three hours later, Schupbach again contacted the police after noticing a "big cut" and bruising on his upper arm.   A police

officer arrived and photographed the injury. Schupbach refused medical treatment. The officers described the cut as "minor" in their report.

{¶10}  After hearing all the evidence and deliberating, the jury found Appellant not guilty of assault, but guilty of criminal damaging.  The trial court sentenced Appellant to 90 days in jail, and ordered her to pay restitution and complete 100 hours of community service.  The trial court suspended the jail sentence on the condition Appellant successfully complete the conditions of her probation.

{¶11} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:

{¶12} "I. THE JURY'S VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "II. COUNSEL WAS INEFFECTIVE FOR FAILURE TO RAISE THE DEFENSE OF DEFENSE OF PROPERTY AND TO REQUEST A JURY INSTRUCTION ON DEFENSE OF PROPERTY."

I

{¶14}  In the first assignment of error, Appellant maintains her conviction is against the manifest weight and sufficiency of the evidence.  We disagree.

{¶15} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.

{¶16} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine

whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St.3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, syllabus 1.

{¶17} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶18}** Appellant was convicted of one count of criminal damaging, in violation of R.C. 2909.06(A)(1), which provides: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent…[k]nowingly, by any means." "'Physical harm to property' means any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." R.C. 2901.01(A)(4).

**{¶19}** Appellant contends there was no evidence of a loss in value and/or use or enjoyment of the fencing material.

**{¶20}** "Loss in value can generally be inferred from *observable damage* and when the damage interferes with the use or enjoyment. *State v. Richie,* 3d Dist.Nos. 13-01-37, 13-01-38, 13-01-39, 2002-Ohio-2178; see, also, *State v. Maust* (1982), 4 Ohio App.3d 187, 189, 447 N.E.2d 125 (Emphasis added).

**{¶21}** In this case, we find the jury could reasonably conclude the state proved all elements of criminal damaging, in particular, loss in value, beyond a reasonable doubt. The surveillance video clearly shows Appellant ripping down the fencing material using a large knife. The video depicts Appellant cutting the fencing material into pieces and throwing it onto the ground. When the police arrive, Appellant is still holding the knife. She admitted to Officer Dendinger she cut down the fencing.

**{¶22}** In addition to loss in value, Appellant's actions also interfered with Schupbach's use and enjoyment of the fencing material. Schupbach planned to use the fencing material to mark his property line and erect a construction barrier around the lot. Schupbach was unable to use the fencing material for this purpose after Appellant knifed the material.

**{¶23}** Appellant's first assignment of error is overruled.

II

**{¶24}** In her second assignment of error, Appellant raises an ineffective assistance of counsel claim.

**{¶25}** The standard of review of an ineffective assistance of counsel claim is well-established. Pursuant to *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, in the absence of those errors, the result of the trial court would have been different. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶26}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.*

**{¶27}** In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

**{¶28}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 143, quoting *Strickland* at 697.

**{¶29}** Appellant submits trial counsel was ineffective for failing to request a jury instruction on the affirmative defense of defense of property.

**{¶30}** Assuming, arguendo, defense counsel's performance was deficient due to his failure to advise Appellant of the possibility of asserting an affirmative defense, we find Appellant is, nonetheless, unable to establish she was prejudiced by such deficiency in the record before us.

**{¶31}** A trial court does not need to instruct the jury on an affirmative defense unless the defendant has successfully raised the affirmative defense by introducing "sufficient evidence, which, if believed, would raise a question in the minds of reasonable [triers of fact] concerning the existence of such issue." *State v. Melchior* (1978), 56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus. Evidence is sufficient where there is reasonable doubt of guilt based upon such a claim. *Id.* at 20. "If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.* Accordingly, if the evidence submitted at trial is believed by the trier of fact, the question is whether that evidence will create reasonable doubt of the defendant's guilt. A trial court does not err in refusing to include an affirmative defense instruction when the evidence does not support the claim. *Id.* at 22.

**{¶32}** Under a defense of property claim, a defendant must "present evidence that he reasonably believed his conduct was necessary to defend his property against the imminent use of unlawful force, and the force used was not likely to cause death or great

bodily harm." *State v. Bruckner* (Sept. 30, 1993)*,* 8th Dist. No. 63296, citing *Columbus v. Dawson* (1986)*,* 33 Ohio App.3d 141.

**{¶33}** We find the evidence in the record would not raise a question in the minds of reasonable jurors concerning the existence of the affirmative defense of defense of property. Appellant admitted to Officer Dendinger a surveyor came to the property and informed her that her fence extended beyond her property line and onto Schupbach's lot. Schupbach was erecting a barrier made of plastic fencing material. There was no imminent threat to either Appellant or her property by Schupbach's actions.

**{¶34}** Accordingly, we find Appellant cannot establish she was prejudiced by trial counsel's failure to request a jury instruction on the affirmative defense of defense of property.

**{¶35}** Appellant's second assignment of error is overruled.

**{¶36}** The judgment of the Canton Municipal Court is affirmed.

By: Hoffman, P.J.

Wise, J. and

Baldwin, J. concur